## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UHLIG LLC d/b/a CONDOCERTS™ and
d/b/a WELCOMELINK®

        Plaintiff,

v.

REALPAGE, INC., and TOMTE, INC. d/b/a
REXERA,

        Defendants.

**JURY TRIAL DEMANDED**

Case No. 2:26-cv-2144

## COMPLAINT AND JURY DEMAND

COMES NOW Plaintiff Uhlig LLC d/b/a CondoCerts™ and d/b/a WelcomeLink® ("Uhlig"), by and through its attorneys, and for its Complaint against Defendants RealPage, Inc. ("RealPage") and TOMTE Inc. d/b/a Rexera ("Rexera"), states and alleges as follows:

## PARTIES

1. Uhlig is a Delaware limited liability company, with its principal place of business at 8455 Lenexa Drive, Overland Park, Kansas 66214. Uhlig does business, *inter alia*, under the brands CondoCerts™ and WelcomeLink®.

2. RealPage, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 2201 Lakeside Blvd., Richardson, Texas 75082.

3. TOMTE Inc. d/b/a Rexera is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 515 E. Main Street, Mailbox 16, Muncie, Indiana 47305.

1

4917-7555-9278.1

## JURISDICTION AND VENUE

4.     This Court may exercise personal jurisdiction over RealPage and Rexera because they agreed to submit to the jurisdiction of this Court concerning any suit, action or other proceeding arising out of the agreements which are the subject of this litigation.

5.     RealPage and Rexera also are subject to personal jurisdiction in the State of Kansas pursuant to K.S.A. 60-308(b)(1), because RealPage and Rexera entered into one or more contracts with a resident of the State of Kansas to be performed in whole or in part in the State of Kansas.

6.     The Court has subject matter jurisdiction based on 28 U.S.C. § 1331 because Defendants have violated the Defend Trade Secrets Act, 18 U.S.C. § 1836(c) and Defendant Rexera has violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.  This Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367.

7.     Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District, and the contracts at issue contain a forum selection clause for this District.

## GENERAL ALLEGATIONS

8.     Uhlig is a national provider, *inter alia*, of resale and lender processing information ("Community Information") for common interest residential communities, including but not limited to homeowner associations, condominiums, co-ops, and similar communities, wherein the deed to property is encumbered by certain obligations to the common community ("Common Interest Communities").

9.      Uhlig manages and provides Community Information as the authorized representative of its clients, including Common Interest Communities and/or property management companies which serve as managing agents for Common Interest Communities (collectively "Uhlig's Clients").

10.     As the authorized representative of Uhlig's Clients, Uhlig provides timely, authoritative Community Information to users who require such information for legitimate purposes such as the purchase, sale, financing, refinancing and transfer of residential real estate located in Common Interest Communities. The Community Information is jointly created, maintained, managed and updated by Uhlig and Uhlig's Clients.

11.     For Uhlig's Clients, Uhlig is the only authorized third party with access to and authorization to share their Community Information.

12.     Uhlig makes the Community Information available to users through various means, including but not limited to the use of proprietary digital ordering sites (each, an "Ordering Site"), software and databases that it created and maintains (together with the Ordering Sites, the "Uhlig Systems").

13.     Access to the Uhlig Systems is restricted to users who expressly accept and agree to contractual terms and conditions that are set forth in Uhlig's website, registration, and ordering agreements ("User Agreements").

14.     If users do not accept the terms and conditions set forth in Uhlig's User Agreements, or are suspected of violating Uhlig's User Agreements, they are not allowed to use the Uhlig Systems and must instead place orders through an offline process (the "Manual Ordering Process").

3

15.     The Manual Ordering Process is limited to specific documents or services, if any, that may be ordered by a property owner or mortgagee for their own property under the law or regulations of the jurisdiction in which the property is located. Because of its narrow scope and the comparative benefits of the Uhlig Systems, the Manual Ordering Process is rarely used, represents a negligible portion of the Community Information managed or delivered by Uhlig, and has not been used by either RealPage or Rexera.

16.     Given the characteristics of the Manual Ordering Process, together with the perishable nature of the information provided and the limited information available to any individual user, it is not possible to reverse engineer, compile or reproduce Uhlig's trade-secret data compilations or proprietary work product through that process.

17.     Together, Uhlig's User Agreements and the Manual Ordering Process are designed: a) to ensure that the Community Information is available only to qualified requesters; b) to ensure that all Community Information provided is timely and accurate; c) to protect the privacy of sensitive information regarding each community and its residents; d) to protect the Community Information from misuse or unauthorized commercialization; e) to protect Uhlig's trade secrets and proprietary work product; f) to protect Uhlig Systems from fraud and abuse, including but not limited to attacks by hackers, bots and automated third-party agents; and g) to ensure compliance with all applicable laws.

18.     Among the other kinds of information it offers, Uhlig provides Community Information that is specific to properties that are being resold or refinanced ("Resale Information"). The Resale Information provided by Uhlig is perishable, time-sensitive, and may

4

include detailed financial and legal information regarding one or more residential units or owner accounts.

19.     As part of the residential mortgage process, Uhlig also provides Community Information related to the Common Interest Community as a whole ("Underwriting Information"). Underwriting Information includes such information as pending litigation, obligations and financial balances of the Common Interest Community as of a specific date. Banks, mortgage companies, credit unions, investors, brokers, lenders, government-sponsored enterprises, housing finance agencies, financing sources, title companies, buyers, sellers and other third parties ("Transaction Participants") rely on the accuracy of Underwriting Information in making financial decisions and risk assessments, including but not limited to the approval of home mortgages, the determination of credit terms, and other significant matters.

20.     Because Resale Information and Underwriting Information are perishable, time-sensitive, rapidly changing, economically sensitive, and not publicly available, Uhlig's certification of Resale Information and Underwriting Information is valid only for a limited period of time.

21.     Uhlig closely guards its compilations of Community Information.

22.     Uhlig obtained access to the individual data points within the compilations of Community Information it maintains by developing contractual relationships with Uhlig's Clients and the expenditure of significant time and financial resources over many years.

23.     Uhlig compiles and protects that information from reverse engineering and from other misuse by providing access to the information under strict restrictions set forth in Uhlig's User Agreements. These restrictions prohibit contracting parties from maintaining, reselling,

5

4917-7555-9278.1

aggregating, reverse engineering, and otherwise making use of the Community Information for commercial purposes.

24.    The compilations of Community Information that Uhlig maintains have independent economic value because the information is not generally known or readily ascertainable by proper means (*e.g.,* without obtaining the same from Uhlig in violation of Uhlig's User Agreements) by those who can make economic use of the same.

25.    Uhlig is the only party with lawful access to Uhlig's compilations of Community Information related to Uhlig's Clients.

26.    There is actual and potential economic value in Uhlig's compilations of Community Information, as evidenced through Uhlig's business model as a whole and, as described below, RealPage and Rexera's misappropriation of the compilations for their own gain.

27.    Uhlig closely tracks and monitors the ordering process of Community Information on its platforms.

28.    When a registrant logs in with credentials and agrees to the Terms of Use (one of Uhlig's User Agreements) by doing so, the login event is tracked. When a registrant selects an address, product, and package, the system generates an order number. At this stage, the order exists in an "unsubmitted" state, and the registrant may abandon the order without submitting it. In any event, the order initiation event is tracked. Then, if the registrant commits to payment, the order moves from "unsubmitted" to "submitted." A submitted order event is tracked. After submission but before processing, the registrant can request order cancellation. The order cancellation event is also tracked.

6

29. Uhlig provides the Community Information for a fee that, in certain instances, is statutorily regulated. Uhlig typically retains a processing fee, and the balance of the payment collected is remitted to Uhlig's Clients.

30. Uhlig's User Agreements are designed to protect the integrity of the Community Information, and to prevent fraudulent, incorrect, obsolete, incomplete, counterfeit or falsified information from being introduced into the national mortgage financing process or otherwise misleading Transaction Participants who rely on such information. Conversely, the misuse, misrepresentation and/or falsification of the Community Information in violation of Uhlig's User Agreements creates significant risks of error, confusion, and financial loss among Transaction Participants who rely on such unauthorized and/or falsified Community Information.

31. Uhlig's User Agreements are further designed to ensure that the transactions involving Community Information that are concluded through the Uhlig Systems, are performed in compliance with all applicable laws and regulations, including but not limited to statutory restrictions on fees, delivery time, and other relevant factors. Conversely, the misuse, retention, resale or misrepresentation of the Community Information in violation of Uhlig's User Agreements may expose Uhlig, Uhlig's Clients, and/or other Transaction Participants to significant risks of legal liability, reputational harm and/or financial loss.

32. Uhlig's User Agreements include but are not limited to: 1) Terms of Use; 2) an Account Registration Agreement; and 3) an Order Submission Agreement.

33. To obtain online access to Community Information from Uhlig, a user is required to execute specific actions on the Ordering Sites operated by Uhlig.

4917-7555-9278.1

34.     Each major step in the online ordering process requires the user's express agreement and consent as a condition of proceeding with an order. The major steps in the online ordering process include: 1) review and acceptance of the Terms of Use as a condition of entering the Ordering Site; 2) review and acceptance of the Account Registration Agreement as a condition of gaining access to the ordering functionality of the Ordering Site; and 3) review and acceptance of the Order Submission Agreement as a condition of placing an order.

35.     The Terms of Use, *inter alia*, require all users to provide current, complete and accurate registration information, and to warrant and agree that all statements in their application for access to and use of the Uhlig Systems are true.

36.     The Terms of Use prohibit all users from reusing, reselling, or aggregating Community Information for commercial purposes.

37.     The Terms of Use also prohibit circumventing Uhlig's systems, policies or determinations as to a registrant's account status, including by attempting to access or use the Ordering Site if the registrant's account has been suspended or cancelled or has otherwise been temporarily or permanently restricted or blocked from using the Ordering Site.

38.     The Terms of Use specifically prohibit use of the Ordering Sites for the purpose of gaining, in any form whatsoever, any competitive intelligence or internal information about or from, or commercial advantage against, CondoCerts or WelcomeLink, its customers, vendors, partners or affiliates, including but not limited to customer lists, software code, technical specifications, production techniques, workflows, documents, transaction data, marketing data, pricing or other economic data, production data or other proprietary information of any kind.

4917-7555-9278.1

39. The Terms of Use prohibit users from accessing, searching, collecting information from, or otherwise interacting with the Uhlig Systems, by "scraping," "crawling" or "spidering" the Uhlig Systems, by the use of any software, device, script or robot, or by any other means (automated or otherwise) other than through the currently available, published interfaces that are provided by Uhlig.

40. The Account Registration Agreement, *inter alia*, prohibits all users / customers from reusing, reselling, or aggregating Community Information for commercial purposes.

41. The Order Submission Agreement, *inter alia*, prohibits all users / customers from reusing, reselling, or aggregating Community Information for commercial purposes.

42. RealPage owns and operates a platform called HomeWiseDocs.

43. HomeWiseDocs, like Uhlig, specializes in the management and provision of Common Interest Community documentation needed for the purchase, sale, financing, refinancing and transfer of residential real estate located in Common Interest Communities.

44. Upon information and belief, on or around July 29, 2025, RealPage acquired Rexera.

45. Rexera claims to specialize in what it describes as an "agentic AI workforce" for the purpose of such activities as HOA document collection, lien searches, mortgage payoff coordination, and condominium reviews.

46. Upon information and belief, RealPage acquired Rexera for the purpose of integrating Rexera's robotic agents with RealPage's HomeWiseDocs platform.

47. Upon information and belief, InspectHOA was TOMTE, Inc.'s previously used assumed business name before the entity adopted the name Rexera, and Rexera directs the

9

4917-7555-9278.1

actions of IH Closing, Elite Closing, IHOA Title, and Point 72 Reality (collectively, the "Rexera-Related Entities"[1]).

48.     Rexera and Rexera-Related Entities have repeatedly registered user accounts, logged in, initiated orders, placed orders, and canceled orders through Uhlig's Ordering Sites.

49.     IH Closing, InspectHOA, and Elite Closing began ordering through Uhlig's Ordering Sites in 2020 and 2021. In 2023, due to its concerns about excessive website traffic and suspected misuse of Community Information, Uhlig suspended all registrants with IHClosing.com and InspectHOA.com email domains.

50.     After IH Closing and InspectHOA were suspended, Point 72 Realty and Rexera began logging into the Uhlig Ordering Sites with high frequency.

51.     Upon investigation of Rexera and the Rexera-Related Entities, Uhlig discovered that Rexera and the Rexera-Related Entities have registered more than 300 user accounts on the Uhlig Systems, many or most of which have been created using false, fictitious, deceptive and/or misleading identities and user data for the apparent purpose of evading Uhlig's security measures and gaining access to Uhlig's Systems, Community Information and trade-secret compilations.

52.     Upon information and belief, Rexera and the Rexera-Related Entities also use third-party email accounts (typically Gmail accounts) and bots to repeatedly log into the Uhlig Ordering Sites and penetrate the Uhlig Systems by initiating orders, canceling orders, and sometimes placing orders through Uhlig's Ordering Sites.

53.     Upon information and belief, Rexera and/or the Rexera-Related Entities have further engaged in a deliberate, systematic attempt to disguise their identities by engaging in IP

---

[1] Uhlig refers to the Rexera-Related Entities as "entities" for convenience only. Upon information and belief, the Rexera-Related Entities are not separately existing entities but are merely names used by Rexera.

10

masking, anomalous IP rotation and other deceptive behavior for the purpose of defeating Uhlig's defensive measures, employing as many as 32,229 unique IP addresses for a single user in the past two years alone.

54.    Uhlig's investigation further revealed unusually high numbers of unused registrations associated with Rexera and Rexera-Related Entities, suggesting failed attempts to circumvent Uhlig's security measures.

55.    According to Uhlig's investigation, Rexera and Rexera-Related Entities have logged onto the Uhlig Ordering Sites more than 114,900 times over the past two years. Unlike typical users, however, only a small percentage of those logins resulted in the placement of an order, and a high proportion of Rexera and Rexera-related users never placed an order, suggesting that the only purpose for their activity was to crawl Uhlig's Ordering Sites, map Uhlig's trade-secret data, and scrape information for competitive purposes in violation of Uhlig's User Agreements. One registrant associated with Rexera and Rexera-Related Entities, for example, logged into the Uhlig Systems over 33,800 times without ever placing an order.

56.    Upon information and belief, once Rexera extracts structured data for a Common Interest Community, it does not initiate new orders for Community Information needed for new transactions moving forward, a pattern that suggests that the information obtained from Uhlig has been retained and reused or resold outside the Uhlig Systems.

57.    In addition to violating Uhlig's User Agreements, the pattern of apparent retention and resale of data associated with Rexera and Rexera-Related Entities creates significant risks that out-of-date, or inaccurate information is being sold or otherwise provided to end users and Transaction Participants. This also bypasses the right of Common Interest Communities to earn

11

fees that offset their costs in maintaining the Community Information and complying with applicable laws.

58.    The pattern of behavior associated with Rexera and Rexera-Related Entities – including but not limited to: a) the high volumes of searches; b) repeated logins searching for the same address within seconds/minutes/hours of each other; c) multiple logins and searches resulting in canceled, submitted, and one delivered order for the same address; d) multiple registrants that repeatedly search the same address through separate accounts even after the exact package was already delivered; and e) repeated searches for the same address while viewing multiple package options -- strongly suggests the use of coordinated efforts and/or robot technology to scrape, compile and retain client, packaging, pricing and other proprietary data from the Uhlig Systems.

59.    Uhlig's customer service departments have also been subjected to an excessively high number of calls and emails from what appear to be bots or other automated agents acting on behalf of Rexera.

60.    Upon information and belief, Rexera retains Community Information improperly scraped or otherwise obtained from Uhlig's Ordering Sites to expand RealPage and Rexera's database of Community Information and/or feeding the information into Defendants' artificial intelligence models and HomeWiseDocs so that it subsequently can resell or exploit the Community Information for commercial purposes in direct violation of Uhlig's User Agreements and other legal obligations.

61.    In ordering Community Information from Uhlig, Rexera executes each of Uhlig's User Agreements referenced above, which specifically prohibit the resale, reuse, and aggregation

4917-7555-9278.1

of Uhlig's Community Information for commercial purposes. In breach of these agreements, Rexera resells, reuses, and aggregates Uhlig's Community Information for Rexera's commercial purposes.

62.    Upon information and belief, Rexera and Rexera-Related Entities charge approximately $130 per transaction to their end users for some or all of the information obtained from the Uhlig Systems.

63.    Upon information and belief, Rexera and Rexera-Related Entities are depriving Common Interest Communities of funds to which they are entitled.

64.    Upon information and belief, Rexera and Rexera-Related Entities are charging Transaction Participants more than is statutorily allowed for some Community Information, an action which exposes Uhlig and Uhlig's Clients to potential financial losses, legal liability and reputational damage.

65.    Although the full extent of their actions has not yet been ascertained due to their use of pseudonyms, false identities and technological means to mask their actions, Uhlig believes that Rexera and Rexera-Related Entities have placed at least 23,389 orders from Uhlig, roughly 16,045 of which reached "delivered" status. Assuming Rexera and Rexera-Related Entities resold each delivered order for Rexera's $130 fee alone, Rexera has generated at least $2,085,850 in direct fees alone by reselling Uhlig's Community Information, before even considering the far larger value to RealPage and Rexera of Uhlig's trade-secret data compilations, customer lists, pricing information, software designs, workflows, and other proprietary data.

13

4917-7555-9278.1

**FIRST CLAIM FOR RELIEF**
**Against Rexera**
**(Breach of Contract – Terms of Use)**

66. Uhlig incorporates by reference the preceding allegations as if fully set forth herein.

67. The Terms of Use prohibit the use of false, fictitious, deceptive or misleading user information for the purpose of registering a user account to gain access to the Uhlig Systems.

68. The Terms of Use prohibit circumventing Uhlig's systems, policies or determinations as to a registrant's account status, including by attempting to access or use the Ordering Sites if the registrant's account has been suspended or cancelled or has otherwise been temporarily or permanently prohibited or blocked from using the Ordering Sites.

69. The Terms of Use prohibit use of the Ordering Sites for the purpose of gaining, in any form whatsoever, any competitive intelligence or internal information about or from, or commercial advantage against, CondoCerts or WelcomeLink, their customers, vendors, partners or affiliates, including but not limited to customer lists, software code, technical specifications, production techniques, workflows, documents, transaction data, marketing data, pricing or other economic data, production data or other proprietary information of any kind.

70. The Terms of Use prohibit users from accessing, searching, collecting information from, or otherwise interacting with the Uhlig Systems by "scraping," "crawling" or "spidering" the Uhlig Systems, by the use of any software, device, script or robot, or by any other means (automated or otherwise) other than through the currently available, published interfaces that are provided by Uhlig.

14

71.     The Terms of Use prohibit the reuse, resale, and aggregation of Community Information for commercial purposes.

72.     Rexera agreed to abide by the Terms of Use as a requirement of using Plaintiff's Ordering Sites.

73.     Upon information and belief, the Rexera-Related Entities also agreed on Rexera's behalf to abide by the Terms of Use as a requirement of using Plaintiff's Ordering Sites as these entities were directed by Rexera and/or are merely aliases used by Rexera.

74.     The Terms of Use constitute a valid and enforceable contract between Uhlig and Rexera.

75.     Rexera breached the Terms of Use by engaging Prohibited Uses as defined in the Terms of Use.

76.     Rexera breached the Terms of Use by repeatedly registering user accounts with false, fictitious, deceptive or misleading user information for the purpose of gaining access to the Uhlig Systems.

77.     Rexera breached the Terms of Use by reusing, reselling, and aggregating Community Information for commercial purposes.

78.     Rexera also breached the Terms of Use by attempting to circumvent Uhlig's security by engaging in IP masking, anomalous IP rotation and other deceptive behavior for the purpose of gaining access to the Uhlig Systems.

79.     Rexera also breached the Terms of Use by attempting to circumvent Uhlig's security measures by ignoring Uhlig's suspension of all registrants with IHClosing.com and

15

InspectHOA.com email domains, and by rebranding itself to continue to place orders as "Rexera" and other Rexera-Related Entities.

80. Rexera breached the Terms of Use by using the Ordering Sites to gain competitive intelligence or internal information about or from, or commercial advantage against, Uhlig, its customers, vendors, partners and/or affiliates.

81. Rexera breached the Terms of Use by accessing, searching, collecting information from, or otherwise interacting with the Ordering Sites by "scraping," "crawling" or "spidering" the Ordering Sites using one or more means to do so, including but not limited to software, device(s), script(s) or robot(s) or by other means currently unknown to Uhlig.

82. As a result of Rexera's breaches, Uhlig has suffered damages in an amount to be determined at trial.

**SECOND CLAIM FOR RELIEF**
**Against Rexera**
**(Breach of Contract – Account Registration Agreement)**

83. Uhlig incorporates by reference the preceding allegations as if fully set forth herein.

84. The Account Registration Agreement prohibits the reuse, resale, and aggregation of Community Information for commercial purposes.

85. The Account Registration Agreement also prohibits each of the "Prohibited Uses" as defined in the Terms of Use.

86. Each Rexera registrant agreed to abide by the Account Registration Agreement as a requirement of being allowed to register an account for the purpose of gaining access to the Uhlig Systems.

16

4917-7555-9278.1

87.    Upon information and belief, each registrant associated with a Rexera-Related Entity also agreed on Rexera's behalf to abide by the Account Registration Agreement as a requirement of being allowed to register an account for the purpose of gaining access to the Uhlig Systems as these entities were directed by Rexera and/or are merely aliases used by Rexera.

88.    The Account Registration Agreement constitutes a valid and enforceable contract between Uhlig and Rexera.

89.    Rexera breached the Account Registration Agreement by reusing, reselling, and aggregating Community Information for commercial purposes.

90.    Rexera breached the Account Registration Agreement by engaging in Prohibited Uses of the Ordering Sites as defined in the Terms of Use.

91.    Rexera breached the Account Registration Agreement by providing false, fictitious, deceptive or misleading user information for the purpose of gaining access to the Uhlig Systems.

92.    Rexera also breached the Account Registration Agreement by attempting to circumvent Uhlig's security by engaging in IP masking, anomalous IP rotation and other deceptive behavior for the purpose of gaining access to the Uhlig Systems.

93.    Rexera also breached the Account Registration Agreement by attempting to circumvent Uhlig's security measures by ignoring Uhlig's suspension of all registrants with IHClosing.com and InspectHOA.com email domains, and by rebranding itself to continue to place orders as "Rexera" and other Rexera-Related Entities.

4917-7555-9278.1

94.    Rexera breached the Account Registration Agreement by using the Ordering Sites to gain competitive intelligence or internal information about or from, or commercial advantage against, Uhlig, its customers, vendors, partners and/or affiliates.

95.    Rexera breached the Account Registration Agreement by accessing, searching, collecting information from, or otherwise interacting with the Ordering Sites by "scraping," "crawling" or "spidering" Uhlig's Systems using one or more means to do so, including but not limited to software, device(s), script(s) or robot(s) or by other means currently unknown to Uhlig.

96.    As a result of Rexera's breach, Uhlig has suffered damages in an amount to be determined at trial.

**THIRD CLAIM FOR RELIEF**
**Against Rexera**
**(Breach of Contract – Order Submission Agreement)**

97.    Uhlig incorporates by reference the preceding allegations as if fully set forth herein.

98.    The Order Submission Agreement prohibits reuse, resale, and aggregation of Community Information for commercial purposes.

99.    The Order Submission Agreement prohibits circumventing Uhlig's systems, policies or determinations as to a registrant's account status, including by attempting to access or use the Ordering Sites if the registrant's account has been suspended or cancelled or has otherwise been temporarily or permanently prohibited or blocked from using the Ordering Sites.

100.    The Order Submission Agreement prohibits use of the Ordering Sites for the purpose of gaining, in any form whatsoever, any competitive intelligence or internal information

about or from, or commercial advantage against, CondoCerts or WelcomeLink, their customers, vendors, partners or affiliates, including but not limited to customer lists, software code, technical specifications, production techniques, workflows, documents, transaction data, marketing data, pricing or other economic data, production data or other proprietary information of any kind.

101. The Order Submission Agreement prohibits users from accessing, searching, collecting information from, or otherwise interacting with the Uhlig's Systems by "scraping," "crawling" or "spidering" Uhlig's Systems, by the use of any software, device, script or robot, or by any other means (automated or otherwise) other than through the currently available, published interfaces that are provided by Uhlig.

102. Rexera agreed to abide by the Order Submission Agreement as a requirement of being allowed to order Community Information from Uhlig's Ordering Sites.

103. Upon information and belief, Rexera-Related Entities also agreed on Rexera's behalf to abide by the Order Submission Agreement as a requirement of being allowed to order Community Information from Uhlig's Ordering Sites as these entities were directed by Rexera and/or are merely aliases used by Rexera.

104. The Order Submission Agreement constitutes a valid and enforceable contract between Uhlig and Rexera.

105. Rexera breached the Order Submission Agreement by reusing, reselling, and aggregating Community Information for commercial purposes.

106. Rexera also breached the Order Submission Agreement by attempting to circumvent Uhlig's security measures by ignoring Uhlig's suspension of all registrants with

19

IHClosing.com and InspectHOA.com email domains, and by rebranding to continue to place orders as "Rexera" and other Rexera-Related Entities.

107. Rexera breached the Order Submission Agreement by using the Uhlig Systems to gain competitive intelligence or internal information about or from, or commercial advantage against, Uhlig, its customers, vendors, partners and/or affiliates.

108. Rexera breached the Order Submission Agreement by accessing, searching, collecting information from, or otherwise interacting with the Uhlig Systems by "scraping," "crawling" or "spidering" the Uhlig Systems using one or more means to do so, including but not limited to software, device(s), script(s) or robot(s) or by other means currently unknown to Uhlig.

109. As a result of Rexera's breach, Uhlig has suffered damages in an amount to be determined at trial.

**FOURTH CLAIM FOR RELIEF**
**Against All Defendants**
**(Unjust Enrichment)**

110. Uhlig incorporates by reference the preceding allegations as if fully set forth herein.

111. By reusing, reselling, and aggregating Uhlig's information without authorization and despite restrictions specifically prohibiting this reuse, resale, and aggregation, Rexera and RealPage received a benefit.

112. Rexera and RealPage know that they are improperly receiving this benefit, as the relevant contractual documents specifically prohibit reuse, resale, and aggregation, and because

20

Uhlig closely guards its Community Information especially for use by competitors like HomeWiseDocs.

113.    Upon information and belief, Rexera and RealPage do not place new orders for Community Information, and thus, at times, resell stale or outdated information for a fee to Transaction Participants.

114.    Upon information and belief, Rexera and RealPage also input the Community Information into their artificial intelligence systems to increase those learning models' knowledge without compensating Uhlig for the subsequent uses.

115.    It is inequitable for Rexera and RealPage to maintain the benefit of reusing, reselling, and aggregating Uhlig information by retaining the fees they charge their end users for access to the information, where such use is specifically prohibited, results in the use of outdated and inaccurate information in real estate transactions, and prevents Common Interest Communities from controlling their information and being privy to real estate transactions involving their communities.

116.    It is also inequitable for Rexera and RealPage to maintain the benefit of reusing, reselling and aggregating Uhlig information by retaining the value of platforms, compilations, and other products or services that would not be available to Rexera and RealPage absent their wrongful accumulation and integration of information obtained from Uhlig.

117.    Rexera and RealPage must pay Uhlig for the value of the information as reused, resold, aggregated, compiled, and integrated by Rexera and RealPage into any form to which value attaches in an amount equal to the amount RealPage and Rexera receive for and/or benefit from these uses.

21

**FIFTH CLAIM FOR RELIEF**
**Against All Defendants**
**(KUTSA - Misappropriation of Trade Secrets)**

118.    Uhlig incorporates by reference the preceding allegations as if fully set forth herein.

119.    Uhlig's compilations of Community Information constitute trade secrets under Kansas, Delaware, Indiana, and Texas law; as explained above, the compilations have independent economic value as they are not generally known or readily ascertainable through proper means.

120.    By compiling, retaining, aggregating, integrating and storing compilations of Community Information obtained from Uhlig in its databases and systems, and utilizing that information to develop, sell or otherwise obtain economic benefit from products and services in breach of Uhlig's User Agreements, RealPage and Rexera have misappropriated Uhlig's trade secrets.

121.    Upon information and belief, the misappropriated compilations of Community Information obtained from Uhlig are stored and used by RealPage and Rexera in its business operations, including in its business as a competitor to Uhlig.

122.    Upon information and belief, the compilations of Community Information obtained from Uhlig and stored by RealPage and Rexera have been or will be used by RealPage and Rexera to obtain economic gain in various ways, including but not limited to using the compilations to integrate and enhance their artificial learning models.

123.    By compiling, retaining and storing compilations of Community Information obtained from Uhlig in their databases and systems, and utilizing that information to develop and

22

sell products and services in breach of Uhlig's User Agreements, RealPage and Rexera have misappropriated Uhlig's trade secrets with knowledge that such misappropriation was achieved through improper means.

124.    Uhlig's User Agreements specifically explain that its Community Information and related processes, including any compilation of Community Information, constitute trade secrets.

125.    Uhlig employs adequate means under the circumstances to protect the secrecy of its trade secrets.

126.    Uhlig prohibits parties that have agreed to Uhlig's User Agreements from compiling, utilizing, or aggregating the trade secrets in products or services or otherwise using the same for any commercial purpose whatsoever.

127.    RealPage and Rexera's misappropriation was willful and malicious, entitling Uhlig to an award of exemplary damages and attorney's fees.

128.    Uhlig is entitled to damages for RealPage and Rexera's misappropriation of Uhlig's trade secrets in an amount to be determined at trial.

### SIXTH CLAIM FOR RELIEF
**Against All Defendants**
**(Defend Trade Secrets Act, 18 U.S.C. § 1836(c) – Misappropriation of Trade Secrets)**

129.    Uhlig incorporates by reference the preceding allegations as if fully set forth herein.

130.    Uhlig's compilations of Community Information constitute trade secrets under Kansas, Delaware, Indiana, and Texas law; as explained above, the compilations of information have independent economic value as they are not generally known or readily ascertainable through proper means.

131. Uhlig takes measures that are adequate under the circumstances to protect the secrecy of these compilations, as the compilations have value to Uhlig due to their secrecy.

132. Upon information and belief, the misappropriated compilations of Community Information obtained from Uhlig are being stored and used by RealPage and Rexera in their business operations, including in RealPage's HomeWiseDocs business as a competitor to Uhlig.

133. Upon information and belief, the compilations of Community Information obtained from Uhlig and stored by RealPage and Rexera have been or will be used by RealPage and Rexera to obtain economic gain in various ways, including but not limited to using the compilations to integrate and enhance other artificial learning models.

134. By compiling, retaining, and storing compilations of Community Information obtained from Uhlig in its databases and systems, and utilizing that information to develop and sell products and services in breach of Uhlig's User Agreements, RealPage and Rexera have misappropriated Uhlig's trade secrets with knowledge that such misappropriation was achieved through improper means.

135. Uhlig's User Agreements specifically explain that its Community Information and related processes, including any compilation of Community Information obtained from Uhlig, constitute trade secrets.

136. Uhlig prohibits parties that have agreed to Uhlig's User Agreements from compiling, utilizing, or aggregating the trade secrets in products or services or otherwise using the same for any commercial purpose whatsoever.

137. RealPage and Rexera's misappropriation was willful and malicious, entitling Uhlig to an award of exemplary damages and attorney's fees.

24

138.    Uhlig is entitled to damages for RealPage and Rexera's misappropriation of Uhlig's trade secrets in an amount to be proven at trial.

**SEVENTH CLAIM FOR RELIEF**
**Against Rexera**
**(Violation of Computer Fraud and Abuse Act, 18 U.S.C. § 1030)**

139.    Uhlig incorporates by reference the preceding allegations as if fully set forth herein.

140.    The Uhlig Systems are used for interstate communication and commerce and are therefore "protected computers" under 18 U.S.C. § 1030(e)(2)(B).

141.    Rexera intentionally accessed the Uhlig Systems and obtained information thereby, and in doing so exceeded authority granted by Uhlig to access the Uhlig Systems in violation of 18 U.S.C. § 1030(a)(2)(C). Uhlig has a civil cause of action for violation of the CFAA under 18 U.S.C. § 1030(g) and has suffered damage or loss.

142.    Specifically, Rexera has exceeded its authorized access of the Uhlig Systems by repeatedly registering user accounts with false, fictitious, deceptive or misleading user information for the purpose of gaining access to the Uhlig Systems; reusing, reselling, and aggregating Community Information for commercial purposes; engaging in IP masking, anomalous IP rotation and other deceptive behavior for the purpose of gaining access to the Uhlig Systems; ignoring Uhlig's suspension of all registrants with IHClosing.com and InspectHOA.com email domains, and by rebranding itself to continue to place orders as "Rexera" and other Rexera-Related Entities; using the Ordering Sites to gain competitive intelligence or internal information about or from, or commercial advantage against, Uhlig, its customers, vendors, partners and/or affiliates; and by accessing, searching, collecting

25

information from, or otherwise interacting with the Ordering Sites by "scraping," "crawling" or "spidering" the Ordering Sites using one or more means to do so, including but not limited to software, device(s), script(s) or robot(s) or by other means currently unknown to Uhlig.

143.   Rexera accessed the Uhlig Systems and otherwise transmitted Uhlig Community Information without authorized consent from Uhlig; or at a minimum, as discussed above, by exceeding any consent that was given.

144.   Rexera was actively involved in implementing the unlawful access alleged herein and promoted the reuse, resale, and aggregation of Uhlig Community Information to gain a competitive advantage, knowing about the privacy violations alleged herein.

145.   Rexera's conduct caused loss to Uhlig under 18 U.S.C. § 1030(c)(4)(A)(i)(I) because the unauthorized access and collection of the Uhlig Community Information and subsequent reuse, resale, or aggregation of that information has diverted sales away from Uhlig and Uhlig has been damaged in the amount of the value of the information as reused, resold, aggregated, compiled, and integrated by Rexera in an amount equal to the amount RealPage and Rexera receive for and/or benefit from these uses.

146.   For these reasons and those discussed in this Complaint, Uhlig is entitled to maintain a civil action against Rexera for the violations of the CFAA to obtain compensatory damages and injunctive relief or other equitable relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Uhlig LLC d/b/a CondoCerts™ and d/b/a WelcomeLink® prays that judgment be entered in its favor and against Defendants RealPage, Inc. and TOMTE Inc.

4917-7555-9278.1

d/b/a Rexera on each and every claim asserted herein, and that it be awarded all damages to which it is entitled under law, including but not limited to the following relief:

1.    An injunction permanently enjoining RealPage and Rexera from reusing, reselling, or aggregating the Community Information for commercial use or in any manner that breaches Uhlig's User Agreements or violates statutory law;

2.    Disgorgement of all profits and the value of other benefits received based on RealPage and Rexera reusing, reselling, aggregating or integrating the Community Information for commercial use;

3.    A constructive trust imposed on RealPage and Rexera's profits from reusing, reselling, aggregating or integrating the Community Information;

4.    Actual and compensatory damages to Uhlig in an amount to be proven at trial;

5.    An award of costs and attorney fees as allowed by applicable law;

6.    Pre-judgment and post-judgment interest;

7.    Where provided for by statute and in the alternative, statutory damages, including exemplary damages; and

8.    Any such further relief as this Court deems just and proper under the circumstances.

## JURY DEMAND

Plaintiff requests a jury on all issues and claims that are triable to a jury.

4917-7555-9278.1

Respectfully submitted this 13th day of March, 2026.

KUTAK ROCK LLP

*s/  Juliet A. Cox*
Juliet A. Cox, KS Bar #17016
2405 Grand Blvd., Suite 600
Kansas City, MO 64108
Tel: (816) 960-0090
Fax: (816) 960-0041
juliet.cox@kutakrock.com

***ATTORNEYS FOR PLAINTIFF***

28

4917-7555-9278.1