**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

UHLIG LLC d/b/a CONDOCERTS™ and
d/b/a WELCOMELINK®

             Plaintiff/Counter-Defendant,

v.

REALPAGE, INC., and TOMTE LLC d/b/a
REXERA,

             Defendants/Counter-Plaintiffs.

Case No. 2:26-CV-2144

**PLAINTIFF/COUNTER-DEFENDANT UHLIG LLC'S MOTION TO DISMISS
COUNTERCLAIMS PURSUANT TO FED. R. CIV. P. 12(b)(6) OR, IN THE
ALTERNATIVE, TO STRIKE PURSUANT TO FED. R. CIV. P. 12(f)**

4929-3195-7168.1

Plaintiff Uhlig LLC d/b/a CondoCerts™ and d/b/a WelcomeLink® ("Uhlig") respectfully moves pursuant to Fed. R. Civ. P. 12(b)(6) for an order dismissing the five counterclaims asserted by Defendants RealPage, Inc. ("RealPage") and TOMTE, LLC d/b/a Rexera ("Rexera") (together, "Defendants") in their Answer and Original Counterclaim (ECF 9) (the "Counterclaims") or, in the alternative, to strike certain allegations in accordance with Fed. R. Civ. P. 12(f).

## INTRODUCTION

The Counterclaims fail to state a claim upon which relief can be granted. Most trace their weakness to a simple, disqualifying fact: while Defendants complain that they are statutorily entitled to receive estoppel certificates and that Uhlig's manual ordering process ("Manual Process") is too slow, ***Defendants do not allege they have ever attempted to use the Manual Process***. With no allegation that they used the Manual Process and were denied or delayed, their claim that the process might fail to comply with statutory delivery timelines in seven states is purely speculative, contrary to fact, and does not satisfy the plausibility standard of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). As their imagined injury collapses, so too do each of the Counterclaims.

As alternative relief, Uhlig requests the Court to strike portions of the Counterclaims that violate the Rule 8 requirement for short and concise statements and the Rule 10 requirement to number paragraphs, and to strike other portions of the Counterclaims that impermissibly reveal settlement communications governed by both F.R.E. 408 and a Confidentiality Agreement.

## FACTUAL BACKGROUND

### I.    The Parties and Platforms

Uhlig operates CondoCerts.com and WelcomeLink.com (together, the "Ordering Sites"), which serve as electronic channels for ordering estoppel certificates, among other documents and services, from homeowner associations ("HOAs") and their property management companies ("PMCs") in connection with real estate transactions. ECF 9, ¶ 165.

1

Rexera alleges it provides document-retrieval services to title companies and lenders. *Id.* at ¶ 174. Rexera claims it "acts as an agent of its title company and lender customers, who in turn act on behalf of homeowners and mortgagees in specific real estate transactions." ECF 9, ¶ 176. Rexera accessed the Ordering Sites through its "proprietary technology, including agentic AI" to place orders "at scale." *Id.* at ¶ 175. RealPage is Rexera's parent company and the parent company of HomeWiseDocs, a direct competitor to Uhlig. *Id.* at ¶ 179; *see also* Doc. 9, "Prel. Stmnt.", p. 2 ("HomeWiseDocs and CondoCerts compete for the same property-management business.  Rexera does not.  Rexera works for title companies and lenders, not for property managers.").

## II.     The Manual Ordering Process

On March 11, 2026, Uhlig terminated Rexera's access to the Ordering Sites because it alleges Rexera was violating agreements required for access to the Ordering Sites, was using fraudulent names and identities, was wrongfully "scraping" and reselling Uhlig's data, and because Uhlig suspected that Rexera did not have proper authority to order sensitive, non-public information such as estoppel certificates. *See id.* at ¶¶ 182, 185. Uhlig also offers a Manual Process, which is an offline process that allows Uhlig to verify a requester's claims before granting it access to non-public information. ECF 9, p. 7 and ¶ 168. Among other things, the Manual Process requires submission of authorization forms executed by the owner, mortgagee, or buyer involved in the transaction (the "Transaction Participant"), confirming that the party submitting the request (*i.e.,* Rexera) is authorized by the Transaction Participant to do so. ECF 9, ¶ 168.

## III.     The Counterclaims

On March 13, 2026, Uhlig filed its Complaint asserting various claims founded in part on Rexera's alleged violations of the User Agreements that must be accepted to use the Ordering Sites. *See, generally,* Doc. 1. Defendants filed Counterclaims, seeking broad declarations that revoking Rexera's access to the Ordering Sites violates seven state statutes and various consumer fraud laws. *See,* ECF 9, ¶¶ 206-234.

**THE COUNTERCLAIMS SHOULD BE DISMISSED**

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. Under the standard set forth in *Twombly*, 550 U.S. at 570, and *Iqbal*, 556 U.S. at 678, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While the Court must accept well-pleaded factual allegations as true, it need not accept legal conclusions cast as factual allegations. *Id.* at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. "Determining whether a complaint states a plausible claim for relief will…be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## I.    Count I (Declaratory Judgment) Should Be Dismissed

Defendants seek four sweeping declarations with the apparent hope that the Court will order Uhlig to give Rexera unrestricted, automated access to Uhlig's Ordering Sites in seven states without regard to fact-specific circumstances. Defendants specifically seek declarations that: (a) Rexera qualifies as an "authorized requestor" under the statutes of Arizona, California, the District of Columbia, Florida, Georgia, North Carolina, and Texas "when acting on behalf of a parcel owner, mortgagee, purchaser, lender, title company, or their agents in connection with a specific real estate transaction"; (b) Uhlig's User Agreements are unenforceable insofar as they restrict access by authorized requestors; (c) Uhlig's alleged exclusivity clause cannot override statutes; and (d) Uhlig assumed statutory obligations of the associations it represents. ECF 9, ¶¶ 208-209.

### A.    *The Court Should Decline to Exercise Discretion Under the Declaratory Judgment Act to Issue Broad, Speculative Declarations that Have No Basis in Law*

The Declaratory Judgment Act, 28 U.S.C. § 2201 ("DJA"), is permissive. It provides that a court "*may* declare the rights . . . of any interested party seeking such declaration." (emphasis added). The Supreme Court confirmed that "district courts possess discretion in determining whether and when to entertain an action under the [DJA]…." *Wilton v. Seven Falls Co.*, 515 U.S.

3

277, 282 (1995). "District courts should consider five factors: [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to *res judicata;* [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective." *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177, 1190 (10th Cir. 2015).

Defendants seek abstract rulings about the meaning of seven different state statutes as applied to hypothetical future transactions under which Defendants believe they will be "authorized requestors." Defendants do not allege a single instance in which they, acting through the Manual Process, were denied documents that any state law required to be produced to an "authorized requestor." Thus, the speculative issue of whether Defendants in the future always will be "authorized requestors" under seven state laws is not a ripe controversy—they have never been denied estoppel certificates because they have never even attempted to use the Manual Process.

As an obvious starting point, none of the seven statutes uses the term "authored requestor." Most appear to contemplate that the unit owner or its designee will make the estoppel request.[1] Whether Rexera would be a "designee" of the unit owner in future transactions would be a fact-specific inquiry, making a blanket declaration that Rexera is an "authorized requestor" wholly improper and irrelevant.[2]

---

[1] *See* A.R.S. § 33-1256(J) (addressing "lienholder, escrow agent, unit owner or person designated by a unit owner"); Florida Statutes §§ 718.116(8) (addressing "a unit owner or the unit owner's designee, or a unit mortgagee or the unit mortgagee's designee") D.C. Code § 42-2018 (addressing "purchaser, or a lender under a deed of trust, mortgage, or encumbrance, or parties designated by them"); Cal. Civ. Code § 4530(a)(1) (addressing "any other recipient authorized by the owner"); O.C.G.A. § 44-3-109(d) (addressing "unit owner, mortgagee of a unit, person having executed a contract for the purchase of a condominium unit, or lender"); N.C. Gen. Stat. §§ 47C-3-118(b) (addressing "a unit owner or the unit owner's authorized agents"); and V.T.C.A. Property Code § 82.157(b) (addressing "the selling unit owner or the owner's agent").

[2] Courts have concluded that a plaintiff's request for a federal court declaration of rights under state law generally is improper for a **single** state's law. *E.g. Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 148 (3d Cir. 2014) ("Where state law is uncertain or undetermined, the proper relationship between federal and state courts requires district courts to step back and be particularly reluctant to exercise DJA jurisdiction.") (quotation marks omitted). Defendants' request for interpretation of **seven** state laws is particularly inappropriate for declaratory judgment.

4

Further, bestowing the title "authorized requestor" on Rexera would not guarantee Defendants access to the Ordering Sites. It would only mean Rexera could submit requests under the Manual Process, which Rexera already can do. Thus, there is nothing to be gained from predetermining Rexera's status as an alleged "authorized requestor."  Defendants' goal appears to be to gain access to Uhlig's online Ordering Sites.  But ***Defendants never allege that any state statute requires that estoppel certificates or any other information for real estate transactions be made available through an online ordering platform.  The reason is that no such law exists***.

Finally, Defendants only seek a determination that they are "authorized requestors" in future transactions "when acting on behalf of a parcel owner, mortgagee, purchaser, lender, title company, or their agents in connection with a specific real estate transaction . . ." ECF 9, ¶ 208. ***This is exactly the information  the Manual Process is designed to verify***. So a declaration to this effect would not relieve Defendants of their obligation to establish their relationship with the owner or lender on a transaction-by-transaction basis, and would therefore accomplish nothing.

Defendants next request a declaration that Uhlig's User Agreements are unenforceable under seven state laws "insofar as they restrict access" by "authorized requestors." *Id.* Defendants' third request is for a declaration that Uhlig's User Agreements cannot override statutory rights. *Id.* Again, these broad, wholly speculative requests concerning future transactions are not ripe without, at minimum, an allegation that Uhlig's Manual Process has resulted in statutory violations. And again, if "access" means automated access through an online platform, there is no allegation that any of the seven states require this, because none in fact does. Defendants' fourth request is for a declaration that Uhlig is subject to statutory restrictions, which is an advisory opinion absent, at minimum, factual allegations that a specific statutory violation occurred through the available Manual Process. *Id.*

Underlying all the flaws in Defendants' claims is the fact that no statute contemplates, much less requires, Defendants' desired commercial goal of gaining unrestricted, automated access to the data and websites of their primary competitor, Uhlig. As Defendants know, Uhlig's Ordering Sites offer an extensive range of products and services, with context-sensitive pricing, rush

5

delivery timeframes, account options, payment methods, and other features, many or most of which are not governed by any state statute. The Manual Process, by contrast, is simply and specifically designed to satisfy all applicable statutory requirements, without exposing Uhlig to hacking or misconduct by third parties such as Defendants. For that reason, although (and indeed because) the Manual Process is strictly compliant with applicable law, it is deemed by Defendants' to be inconvenient and "commercially unreasonable" for their business purposes, so they dismiss and disparage it, and instead ask the Court to force Uhlig to grant Defendants' preferred form of access, with no limitations. There is no statutory basis for such a request, and Defendants offer no legal authority or factual allegations that might support such an extraordinary judicial intervention.

Defendants' four declaratory judgment claims thus fail all five Tenth Circuit factors: [1] they will not settle any actual controversy because Defendants' ability to demonstrate they are an "authorized representative" is fact-dependent and specific to future transactions and, in any event, would not guarantee Defendants access to the Ordering Sites as opposed to the Manual Process; [2] for this same reason, they would serve no useful purpose in clarifying the legal relations at issue as they inevitably will be dependent on factual matters over time; [3] the declaratory remedy most certainly is being used for the purpose of procedural fencing and to provide an arena for a race to *res judicata*, apparently so Defendants can claim entitlement to accessing the Ordering Sites forever (which their requested declarations would not provide); [4] these claims would increase friction between federal and state courts and improperly encroach upon state jurisdiction, as Defendants seek declarations of their rights with respect to ***seven*** state statutes; and [5] there is an alternative remedy which is better or more effective, namely, resolution of Uhlig's claims in this lawsuit, which are predicated on Defendants' violation of the User Agreements.[3]

---

[3] Further making declaratory judgment improper is Defendants' assertion that Rexera utilizes "agentic AI" to query online platforms such as the Ordering Sites. ECF 9, ¶ 175. According to M.I.T., agentic AI "integrates with other software systems to complete tasks independently or with minimal human supervision." https://mitsloan.mit.edu/ideas-made-to-matter/agentic-ai-explained (last visited May 18, 2026). Uhlig is unaware of any Court ever requiring a private website to allow access to artificial intelligence agents.

### B.   Count I Is Not Ripe

Even if the Court were inclined to exercise DJA jurisdiction, Count I is not ripe for adjudication. Ripeness requires a real and substantial controversy between the parties that is definite and concrete. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 97 (2013). Defendants' DJA claims are premised on the *assumption* that Uhlig's Manual Process does not yield estoppel certificates in compliance with statutory requirements. Yet Defendants do not allege they ever submitted a request through the Manual Process.

A DJA claim based on what might happen if Defendants were to use an available process they have never tried is the quintessential abstract, hypothetical dispute that federal courts are not empowered to resolve. Defendants' disagreement with the design of the Manual Process does not create a justiciable controversy, especially with no allegation that the process prevented them from obtaining documents to which they were entitled in each of the seven states.

### C.   Count I Lacks Plausibility

Finally, Count I fails under *Twombly* and *Iqbal* because it does not plausibly allege that Uhlig has violated any state statute. The core premise of Count I is that the Manual Process is the only alternative to the Ordering Sites and that this process "cannot feasibly be completed within the statutory timeframes." ECF 9, ¶ 169. These are conclusory assertions, not plausible factual allegations. Defendants have never tested the process and cannot purport to know the outcome.

What Defendants allege is that the process appears cumbersome on its face. *Id.* But an allegation that a process looks inconvenient—without any allegation that it actually fails to comply with legal requirements—does not plausibly state a claim for declaratory relief. The statutory obligations cited by Defendants impose timeframes on associations. Nothing in those statutes dictates that requests must be accepted or fulfilled through an online platform – indeed the Manual Process is simply the same kind of analog, non-automated process that predominated before online alternatives were gradually introduced, and that is still used for thousands of transactions where online processing is not available or preferred.

4929-3195-7168.1

## II.    Count II (Tortious Interference with Business Relationships) Should be Dismissed

Defendants colorfully allege Uhlig tortiously interfered with Rexera's business relationships with PMCs, HOA boards, title companies, and lenders by: (a) "seeding a false narrative" through sales relationships; (b) providing PMCs with "scripted language" to reject Rexera's requests; and (c) leveraging alleged exclusive contracts to coerce PMCs into refusing to deal with Rexera. ECF 9, ¶ 212. Count II is full of conclusory allegations and fails to state a claim.

### A.    Defendants' conclusory allegations fail to plausibly state a claim.

The allegations underlying Count II (and Counts III through V) generally are set forth in ¶¶ 184 through 190 (although they are reframed and regurgitated throughout the pleading as if they were new). They are carefully-worded, conclusory, and fail to include any specific actionable conduct by Uhlig. For instance, ¶ 185 says a PMC sent Rexera an email that "parroted Uhig's litigation allegations"; ¶ 186 says a PMC terminating its relationship made "discovery-type requests"; ¶ 187 says other unnamed PMCs have been "fed CondoCerts talking points"; ¶ 188 says Uhlig embarked on a "campaign" which is "documented by independent sources"; ¶ 189 says "Uhlig's conduct already has interfered with well over one thousand customer transactions"; and ¶ 190 says several PMCs have terminated their relationship and "cited the false accusations disseminated by Uhlig." These paragraphs allege no specifics as to: (a) the when, what, and how of Uhlig's specific representations; (b) the parties involved; or (c) the alleged business relationships that were interfered with. Rather, Count II represents the height of conclusory allegations and therefore fails to state a claim. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (complaint should be dismissed "if [the allegations] are so general that they encompass a wide swath of conduct, much of it innocent").

### B.    Defendants' Allegations Fail to Show Uhlig's Conduct Was Unjustified

A claim for tortious interference requires that the defendant's interference be improper or without justification. *See Restatement (Second) of Torts* § 767 (listing factors for determining

8

impropriety).[4] Uhlig's alleged conduct – enforcing its contractual arrangements with PMCs and allegedly directing those PMCs not to deliver documents outside the contractual framework – is the exercise of legitimate contractual rights. Defendants allege Uhlig has exclusive contracts requiring PMCs to route "substantially all" estoppel certificate transactions through Uhlig. ECF 9, ¶ 208. Enforcing one's own contracts is not tortious; it is the exercise of a legal right. *Coon v. Trans Am Fin. Servs.*, No. 24-4025-DDC-RES, 2025 WL 317513, at *7 (D. Kan. Jan. 28, 2025) ("Beginning with the obvious, parties to a contract have the authority to enforce it.")

The only way Defendants conceivably could plead lack of justification is to establish that Uhlig's contracts themselves are illegal – *i.e.*, that they violate state statutes requiring associations to produce estoppel certificates. *DP-Tek, Inc. v. AT & T Glob. Info. Sols. Co.*, 100 F.3d 828, 834 (10th Cir. 1996) ("[C]ompetitive conduct which is neither illegal nor independently actionable does not become actionable because it interferes with another's prospective contractual relations." (internal quotation omitted)). Defendants cannot plausibly allege that Uhlig's Manual Process fails to comply with seven state statutes because they have never used it. If the Manual Process permits delivery of estoppel certificates in compliance with those statutes, then Uhlig's contracts do not override any statutory obligation – they simply channel the most convenient method of delivery through a single third-party provider, while preserving an alternative path.

### C.    Defendants Have Not Alleged Actionable Falsehood

To the extent Defendants cognizably allege that Uhlig made false statements – specifically, that Rexera was "not an authorized party" and was "taking Uhlig data and claiming it as their own" (ECF 9, ¶ 187) – these statements are not actionable in the context of a tortious interference claim. Whether Rexera is an "authorized party" is a legal characterization, not a factual statement susceptible to being "true" or "false." Uhlig's position, advanced in this litigation, is that Rexera violated Uhlig's User Agreements and is not authorized to access the Ordering Sites. A party's communication of its legal position to business partners does not constitute tortious interference.

---

[4] Defendants do not identify the state law applicable to this claim. Given that the nature of the claim involves alleged tortious actions taken by Uhlig, which is headquartered in Kansas, Uhlig presumes Kansas law would apply. Kansas follows § 767 of the Restatement (Second) of Torts. *Turner v. Halliburton Co.,* 722 P.2d 1106, 1116-17 (Kan. 1986).

4929-3195-7168.1

*E.g., Williams v. Greenstein*, 580 P.3d 43, 54 (Kan. Ct. App. 2025), *review denied* (Feb. 27, 2026) (noting that the Kansas anti-SLAPP law, KS-ST 60-5320(c)(5), broadly defines "exercise of the right to petition" as: "(A) A communication in or pertaining to: (i) A judicial proceeding;").

### III.    Count III (North Carolina Unfair and Deceptive Trade Practices, N.C. Gen. Stat. § 75-1.1) Should be Dismissed

Count III asserts a claim under N.C. Gen. Stat. § 75-1.1, alleging Uhlig engaged in unfair methods of competition and unfair or deceptive acts or practices. "As a general rule, a practice is considered unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *S. Atl. Ltd. P'ship of Tennessee, L.P. v. Riese*, 284 F.3d 518, 535 (4th Cir. 2002) (cleaned up).

The predicate for Count III is that Uhlig's PMC contracts and Manual Process violate state estoppel certificate statutes. ECF 9, ¶ 218. As explained above, Defendants have not plausibly alleged any such violation because they have never used, and have no relevant experience with, the Manual Process. Without a plausible allegation that Uhlig is actually preventing statutory compliance – as opposed to merely making compliance less convenient than Defendants prefer – the "unfairness" theory collapses. An act is not "unfair" within the meaning of § 75-1.1 merely because it channels transactions through particular contractual arrangements, especially where an alternative (the Manual Process) exists and has never been alleged to fail. *Khouri v. Nat'l Gen. Ins. Mktg., Inc.*, 501 F. Supp. 3d 353, 359 (M.D.N.C. 2020) ("To be 'deceptive' within the meaning of § 75–1.1, a misleading act must occur under egregious or aggravating circumstances, and the harm resulting from the alleged deceptive practice must be such that the plaintiff could not reasonably avoid it.") (quotations omitted).

Underscoring the weakness of this claim, Defendants also assert harm from Uhlig's "serial litigation." However, Defendants do not allege they were parties to these cases (which they were not), so there is no plausible basis linking these lawsuits to any harm to Defendants.[5] Defendants

---

[5] Defendants cite four lawsuits that did not receive "a contested disposition on the merits" in an attempt to create a narrative that Uhlig is a serial litigator that lacks legitimate business interests. *Uhlig LLC v. CoreLogic, Inc.*, No. 2:21-cv-2543-DDC (D. Kan); *Uhlig, LLC v. PropLogix, LLC*, No. 2:22-cv-2475-KHV-ADM (D. Kan.); *Uhlig LLC v.*

finally cite their vague allegations concerning scripted communications and talking points which, as explained above, are conclusory and fail to reflect any actionable conduct by Uhlig.

### IV.    Count IV (California Unfair Competition, Cal. Bus. & Prof. Code § 17200) Should be Dismissed

Defendants bring a claim under California's Unfair Competition Law ("UCL"), alleging Uhlig engaged in "unlawful," "unfair," and "fraudulent" business practices.

#### A.    *Count IV should be dismissed because Defendants do not allege lack of adequate legal remedy.*

The UCL only provides equitable relief, which is what Defendants request. *See* ECF 9, Prayer for Relief. However, following the Ninth Circuit's decision in *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), courts require UCL parties to plead the lack of an adequate remedy at law. *Johnson v. Trumpet Behavioral Health, LLC*, 3:21-CV-03221-WHO, 2022 WL 74163, at *1 (N.D. Cal. Jan. 7, 2022). Defendants do not so plead. Moreover, even where parties do so plead, dismissal is appropriate if other claims make apparent there is an adequate remedy at law, as is the case here. *Little Seeds Children's Ctr., Inc. v. Citibank, N.A.*, 815 F. Supp. 3d 891, 906 (N.D. Cal. 2025) ("Because Plaintiffs have chosen to clearly articulate their basis for concluding that there is no adequate remedy at law, and because the Court can determine that this basis is defective as a matter of law, these allegations are insufficient.")

#### B.    *The "Unlawful" Prong Fails Because No Predicate Violation Is Alleged*

"To state a cause of action based on an 'unlawful' business act or practice under the UCL, a plaintiff must allege facts sufficient to show a violation of some underlying law." *Perez v. Wells*

---

*Stellar Innov. Sols. Corp.*, No. 2:23-cv-2260-JWB-TJJ (D. Kan.); *Uhlig LLC v. Privo Corp.*, No. 2:23-cv-2292-KHV-RES (D. Kan.). Defendants fail to disclose that three of these lawsuits were related (Privo and Stellar were acting on behalf of PropLogix). Nor do Defendants disclose that one of the defendants did not defend the lawsuit resulting in a default judgment (*Privo*, ECF 11), and the other defendant consented to a permanent injunction resulting in dismissal (*Stellar*, ECF 41 & 42). The CoreLogic case was settled confidentially after CoreLogic's motion for summary judgment was, in large part, denied. *Corelogic*, ECF No. 353. The PropLogix case was settled confidentially. *Proplogix*, ECF 342. These cases simply highlight that the estoppel industry is rife with opportunistic parties like Defendants, obliging Uhlig to defend against unlawful use of its Ordering Sites. Indeed, it is RealPage that has been widely accused of improperly monetizing and commercializing non-public information, and has been repeatedly investigated and sued for its alleged misuse of private data. *See In Re: Realpage, Inc., Rental Software Antitrust Litigation*, Case No. 3:23-md-3071, pending in the United States District Court, Middle District of Tennessee, Nashville Division, and, *e.g.,* ECF 728 (Second Amended Complaint) at ¶ 1 ("From at least January 2016, through the present (the "Conspiracy Period"), Defendants engaged in a nationwide conspiracy to fix and inflate the price of multifamily rental housing across the country.")

11

4929-3195-7168.1

*Fargo Bank, N.A.*, 929 F. Supp. 2d 988, 1003 (N.D. Cal. 2013). Defendants allege that Uhlig's conduct violates Cal. Civ. Code § 4530(a)(3), which provides that "[d]elivery of the documents required by this section shall not be withheld for any reason nor subject to any condition except the payment of the fee." Defendants do not allege that they sought documents through the Manual Process, paid the required fee, and were denied delivery. Without such an allegation, they have not plausibly alleged a violation of § 4530(a)(3). Uhlig's conditioning use of its electronic platform on compliance with terms of use cannot violate § 4530(a)(3) so long as an alternative path exists for obtaining the documents – which Defendants admit it does in the form of the Manual Process.

### C. The "Unfair" and "Fraudulent" Prongs Fail for the Same Reasons

The "unfair" prong of the UCL requires that Uhlig's conduct threaten an incipient violation of antitrust law, or that the harm to consumers substantially outweighs the utility of the defendant's practice. *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214 (9th Cir. 2020). Defendants' unfairness theory depends on the Manual Process being nonfunctional – an allegation they cannot support because they never tried it. Similarly, the "fraudulent" prong requires conduct "likely to deceive members of the public." As discussed above, Defendants have plead no specific fraudulent conduct by Uhlig; all they offer are conclusory allegations. Uhlig's characterization of Rexera as "not authorized" reflects Uhlig's legal position – not a factual misrepresentation. It is protected by legal privilege. *See., e.g., Musk v. OpenAI, Inc.*, 795 F. Supp. 3d 1179, 1185 (N.D. Cal. 2025) (privilege extends to "include publication to nonparties with a substantial interest in the proceeding").

## V. Count V (Florida Unfair Trade Practices, Fla. Stat. § 501.204) Should be Dismissed.

Defendants bring a claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), alleging that Uhlig engaged in unfair and deceptive practices causing harm to consumers. "To state a FDUTPA claim, a plaintiff must allege three basic elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Deere Constr., LLC v. Cemex Constr. Materials Florida, LLC*, 198 F. Supp. 3d 1332, 1337–38 (S.D. Fla. 2016).

12

4929-3195-7168.1

Like Counts III and IV, Count V is predicated on the allegation that Uhlig's Manual Process cannot comply with Florida's statutory requirements. Fla. Stat. §§ 720.30851 and 718.116(8) require associations to issue estoppel certificates within ten business days of a request. Defendants do not allege they submitted any request through the Manual Process and failed to receive a certificate in compliance with Florida statutes. Their claim that the process "cannot feasibly be completed within the statutory timeframes" is a conclusory assertion unsupported by any factual allegation of actual failure.

Further, the allegations do not state a claim. In ¶ 231, Defendants make accusations about the impact of Uhlig's alleged conduct on homeowners. ***Defendants are not homeowners. They are business competitors seeking to use the consumer protection statute as a weapon in a commercial dispute.*** To the extent they assert harm to third-party consumers, they lack standing. In ¶ 232, Defendants rely on the same conclusory allegations on which Counts II - IV are predicated. For the reasons above, these allegations are insufficient because they are both conclusory and are privileged statements made as to Uhlig's position in pending litigation.

## IN THE ALTERNATIVE, CERTAIN ALLEGATIONS SHOULD BE STRICKEN

### A. The Eight-Page "Preliminary Statement" Violates Rules 8 And 10 And Should Be Stricken As Immaterial And Redundant.

Fed. R. Civ. P. 8(a)(2) states that a pleading setting forth a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Under Rule 8(b)(1)(A), a party responding to a pleading must "state in short and plain terms its defenses to each claim asserted against it." Emphasizing these requirements, Rule 8(d), titled "Pleading to Be Concise and Direct…", provides at subsection (1) that "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 10(b) states the party "must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."

"Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). "The law recognizes a significant difference between notice pleading and

13

'shotgun' pleading." *Glenn v. First Nat. Bank in Grand Junction*, 868 F.2d 368, 371 (10th Cir. 1989)[6]; *see also Frazier v. Ortiz*, No. 06-1286, 2007 WL 10765, at \*2 (10th Cir. Jan. 3, 2007) ("the complaint must be no more than 'a short and plain statement'."); *Bonjorno v. Dep't for Children & Families*, 25-1042-JWB, 2025 WL 1651782, at \*1 (D. Kan. June 11, 2025) (dismissing complaint violating Rules 8 and 10).

The eight-page "Preliminary Statement" does not conform with Rule 8 or Rule 10. *See* ECF 9 at pp 1-9. It is not formatted as an answer as it does not correspond to any allegations in Uhlig's Complaint. *See* ECF 1. Nor is the "Preliminary Statement" formatted as a counterclaim, as it is not included in the section designated "Original Counterclaim" starting at page 27. Nor does it include numbered allegations to which Uhlig could respond. The "Preliminary Statement" represents advocacy, repeating later asserted allegations, including the inflammatory and inadmissible settlement communications discussed below.

Rule 12(f) allows the Court to strike material that is redundant or immaterial. Defendants' shotgun form of pleading in the eight-page Preliminary Statement is just that. The Court should strike the eight-page Preliminary Statement as redundant and noncompliant with Rules 8 and 10.

### B.    *The Allegations of Pre-lawsuit Discussions Should Be Stricken*

In addition, the Court should strike certain portions of Defendants' Answer and Original Counterclaim that reference, describe, or disclose confidential settlement communications. Uhlig identified these portions in the Unopposed Motion to Seal (ECF 27) at pages 1-2 and include portions of paragraphs 150, 182, 183, 196, 197, 198, 199, 205, 214, 219, and 232, and portions of

---

[6] As one court noted over ten years ago:

A troubling trend toward prolixity in pleading is infecting court dockets in this district and elsewhere. As this case illustrates, a growing number of attorneys, from solo practitioners to "big law" partners, are ignoring Rule 8 and its exhortation that "[a] pleading ... must contain ... a short and plain statement of the claim...." Fed.R.Civ.P. 8(a)(2); *see also* Fed.R.Civ.P. 8(d)(1) (requiring that allegations be "simple, concise, and direct")....The "short and plain" statement requirement of Rule 8 serves many salutary purposes. It focuses litigants and judges on the real issues in dispute. It also aids the public in understanding the judicial process. Disregarding it only spawns mischief.

*UPS Store, Inc. v. Hagan*, 99 F. Supp. 3d 426, 431–32 (S.D.N.Y. 2015)

the preliminary statement appearing on pages 3, 4, 7, and 8 of ECF 9. The passages reference communications during pre-litigation settlement discussions that took place after Uhlig served a cease-and-desist letter on RealPage. On or about October 6–7, 2025, the parties executed a mutual covenant not to sue. The parties then executed a Confidentiality Agreement governing those discussions. The challenged passages disclose the fact and substance of settlement negotiations.

The Confidentiality Agreement prohibits both the "use" and "disclosure" of covered information. By embedding these communications in their pleading, Defendants both used and disclosed covered information in violation of the agreement. Defendants argue no breach occurred because the filing was made under provisional seal. But the Confidentiality Agreement does not carve out an exception for provisionally sealed filings; it prohibits use and disclosure categorically.

Moreover, Rule 408 prohibits the use of settlement negotiations and offers to compromise to "prove or disprove the validity or amount of a disputed claim." Fed. R. Evid. 408(a). The challenged passages describe terms under which the parties explored resolving their dispute. None of Rule 408's narrow exceptions applies: the passages are not offered to prove witness bias, negate a contention of undue delay, or establish any other permissible purpose. Rather, Defendants deployed communications to paint Uhlig's claims as a "leverage play" – an argument that goes directly to the validity and motivation of Uhlig's claims. That is what Rule 408 prohibits.

A court under Rule 12 may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." "'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded, or a statement of unnecessary particulars in connection with and descriptive of that which is material." § 1382 Motion to Strike—Redundant, Immaterial, Impertinent, or Scandalous Matter, 5C *Fed. Prac. & Proc. Civ.* § 1382 (3d ed.) "Impertinent" matter "consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.* "There exists a strong public interest in favor of secrecy of matters discussed by parties during settlement negotiations." *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 980 (6th Cir. 2003) (upholding denial of discovery into settlement negotiations). The allegations of settlement discussions are, by definition, impertinent and immaterial.

15

Respectfully submitted this 29th day of May, 2026.

KUTAK ROCK LLP

*s/ Juliet A. Cox*
Juliet A. Cox, KS Bar #17016
2405 Grand Blvd., Suite 600
Kansas City, MO 64108
Tel: (816) 960-0090
Fax: (816) 960-0041
juliet.cox@kutakrock.com

and

Thomas W. Snyder, CO Bar #33106
(admitted *pro hac vice*)
Hannah E. Huston, CO Bar #59293
(admitted *pro hac vice*)
KUTAK ROCK LLP
2001 16th Street,, Suite 1800
Denver, CO 80202
Tel: 303-297-2400
Fax: 303-292-7799
Thomas.snyder@kutakrock.com
Hannah.huston@kutakrock.com

*Attorneys for Plaintiff*

16

4929-3195-7168.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of May, 2026 the foregoing was filed via CM-ECF, which will automatically send an electronic copy to all counsel of record.

s/ *Juliet A. Cox*
*ATTORNEYS FOR PLAINTIFF*

17

4929-3195-7168.1