# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UHLIG LLC d/b/a CONDOCERTS™ and
d/b/a WELCOMELINK®

                Plaintiff/Counter-Defendant,

v.

REALPAGE, INC., TOMTE, LLC d/b/a
REXERA, and NEXTLEVEL ASSOCIATION
SOLUTIONS, INC. d/b/a HOMEWISEDOCS,

                Defendants/Counter-Plaintiffs.

Case No. 2:26-CV-2144

## PLAINTIFF/COUNTER-DEFENDANT UHLIG LLC'S MOTION TO DISMISS AMENDED COUNTERCLAIMS PURSUANT TO FED. R. CIV. P. 12(b)(6) OR, IN THE ALTERNATIVE, TO STRIKE PURSUANT TO FED. R. CIV. P. 12(f)

Plaintiff Uhlig LLC d/b/a CondoCerts™ and d/b/a WelcomeLink® ("Uhlig") respectfully moves pursuant to Fed. R. Civ. P. 12(b)(6) for an order dismissing the six Amended Counterclaims asserted by Defendants RealPage, Inc. ("RealPage"), TOMTE, LLC d/b/a Rexera ("Rexera"), and NextLevel Association Solutions, Inc. d/b/a HomeWiseDocs ("HomeWise") (together, "Defendants") in their Amended Counterclaims and Answer to Amended Complaint (ECF 40) (the "Amended Counterclaims"), or in the alternative, to strike allegations pursuant to Fed. R. Civ. P. 12(f).

4925-3696-3260.4

**INTRODUCTION**

On May 29, 2026, Uhlig moved to dismiss the counterclaims Defendants filed on April 24, 2026. ECF 9 and 36. On June 22, 2026, Defendants filed Amended Counterclaims, adding a claim and attempting to plead around the deficiencies identified in Uhlig's motion. Nevertheless, the Amended Counterclaims still do not state a claim upon which relief may be granted, primarily because Defendants do not plead Rexera ever submitted a single request through Uhlig's manual ordering process ("Manual Process") that was denied, delayed, or prevented Rexera from obtaining documents required to be produced by any state law. With no such allegation, Defendants' claim that the Manual Process, if used, ***might*** fail to comply with statutory delivery timelines in seven states is pure speculation and does not satisfy the plausibility standard of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

As alternative relief, Uhlig requests that the Court strike portions of the Amended Counterclaim that impermissibly reveal settlement communications between the parties.

**FACTUAL BACKGROUND**

**I.      The Parties and Platforms**

Uhlig operates CondoCerts.com and WelcomeLink.com (together, the "Ordering Sites"), which are electronic channels for ordering estoppel certificates, among other documents and services, from homeowner associations ("HOAs") and property management companies ("PMCs") in connection with real estate transactions. *See* ECF 32, ¶¶ 1, 11, 15. Rexera alleges it provides document-retrieval services to title companies and lenders. ECF 38, ¶ 25. Rexera claims it "acts as an agent of its title company and lender customers, who in turn act on behalf of homeowners and mortgagees in specific real estate transactions." *Id.* at ¶ 28. Rexera accessed the Ordering Sites through its "proprietary technology, including agentic AI" to place orders "at scale." *Id.* at ¶ 27. RealPage is the parent company of both Rexera and HomeWise, which is a direct competitor to Uhlig. ECF 32, ¶¶ 75 and 77 and ECF 40, ¶¶ 75 and 77 at pp. 45-46.

1

## II.     The Manual Ordering Process

On March 11, 2026, Uhlig terminated Rexera's access to the Ordering Sites for violating Uhlig's User Agreements. *See* ECF 38, ¶¶ 33, 35. Uhlig also offers a Manual Process, which is an offline process that allows Uhlig to verify a requester's claims before providing it non-public information. ECF 38, ¶ 21. Among other things, the Manual Process requires submission of authorization forms executed by the owner, mortgagee, or buyer involved in the transaction (the "Transaction Participant"), to confirm the party submitting the request is authorized by the Transaction Participant to do so. ECF 38, ¶ 22.

## III.    The Amended Counterclaims

On March 13, 2026, Uhlig filed its original Complaint asserting various claims, including breach of Uhlig's User Agreements. *See, generally,* ECF 1. Defendants filed counterclaims (ECF 9), seeking broad declarations that Uhlig revoking Rexera's access to the Ordering Sites violates seven state statutes and various consumer fraud laws. On May 15, 2026, Uhlig filed its Amended Complaint, adding HomeWise as a Defendant. *See* ECF 32. Defendants then filed Amended Counterclaims (ECF 40), adding a Lanham Act claim (Count VI), while largely repeating the same conclusory allegations in the original Counterclaims.

**THE AMENDED COUNTERCLAIMS SHOULD BE DISMISSED**

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. Under the standard set forth in *Twombly*, 550 U.S. at 570, and *Iqbal*, 556 U.S. at 678, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While the Court must accept well-pleaded factual allegations as true, it need not accept legal conclusions cast as factual allegations. *Id.* at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. "Determining whether a complaint states a plausible claim for relief will…be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

2

## I.      Count I (Declaratory Judgment) Should Be Dismissed

Defendants seek four sweeping declarations apparently hoping the Court will order Uhlig to give Rexera unrestricted, automated access to Uhlig's Ordering Sites. Defendants seek declarations that: (a) Rexera qualifies as an "authorized requestor" under the statutes of Arizona, California, the District of Columbia, Florida, Georgia, North Carolina, and Texas "when acting on behalf of a parcel owner, mortgagee, purchaser, lender, title company, or their agents in connection with a specific real estate transaction"; (b) Uhlig's User Agreements are unenforceable insofar as they restrict access by authorized requestors; (c) Uhlig's alleged exclusivity clause cannot override statutes; and (d) Uhlig assumed statutory obligations of the HOAs it represents. ECF 38, ¶¶ 72-78.

### A.      The Court Should Decline to Exercise Discretion Under the DJA

The Declaratory Judgment Act, 28 U.S.C. § 2201 ("DJA"), is permissive. It provides that a court "*may* declare the rights . . . of any interested party seeking such declaration." (emphasis added). The Supreme Court confirmed that "district courts possess discretion in determining whether and when to entertain an action under the [DJA]…." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). "District courts should consider five factors: [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to *res judicata;* [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective." *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177, 1190 (10th Cir. 2015).

#### 1.      Defendants' Proposed Declarations Are Improper on Their Face.

Defendants seek abstract rulings about the meaning of seven different state statutes as applied to hypothetical *future* transactions under which Defendants believe they will be "authorized requestors." This is improper for several reasons. First, Defendants do not allege a single instance in which they used the Manual Process and were denied documents that any state law required be provided to an "authorized requestor." Whether Defendants in the future will

3

4925-3696-3260.4

qualify as "authorized requestors" under seven state laws is not a ripe controversy—Defendants have not been denied estoppel certificates because they have not attempted to use the Manual Process. Recognizing this weakness, Defendants added a new (and dubious) allegation in their Amended Counterclaims that Uhlig's principal, Mark Uhlig, stated the Manual Process was designed to be "commercially unviable." ECF 40, ¶ 23. Defendants have not used the Manual Process and thus cannot allege it does not comply with applicable laws.

Second, none of the seven statutes uses the term "authorized requestor." Most contemplate the owner or its designee will make the request.[1] Whether Rexera would be a "designee" of the unit owner in future transactions would be a fact-specific inquiry, making a blanket declaration that Rexera is an "authorized requestor" wholly improper.[2]  Third, bestowing the title "authorized requestor" on Rexera would not guarantee Defendants access to the Ordering Sites. It would only mean Rexera could submit requests under the Manual Process, which it already can do. Thus, there is nothing to be gained from predetermining Rexera's status as an alleged "authorized requestor." Notably, ***Defendants concede that no statute requires estoppel certificates or any other information for real estate transactions to be made available through an online ordering platform.*** ECF 9, ¶ 75. Fourth, Defendants only seek a determination that they are "authorized requestors" in future transactions "when acting on behalf of a parcel owner, mortgagee, purchaser, lender, title company, or their agents in connection with a specific real estate transaction . . ." ECF 38, ¶ 74. ***This is exactly the information the Manual Process is designed to verify***. A declaration

---

[1] *See* A.R.S. § 33-1256(J) (addressing "lienholder, escrow agent, unit owner or person designated by a unit owner"); Florida Statute § 718.116(8) (addressing "a unit owner or the unit owner's designee, or a unit mortgagee or the unit mortgagee's designee"); D.C. Code § 42-2018 (addressing "purchaser, or a lender under a deed of trust, mortgage, or encumbrance, or parties designated by them"); Cal. Civ. Code § 4530(a)(1) (addressing "any other recipient authorized by the owner"); O.C.G.A. § 44-3-109(d) (addressing "unit owner, mortgagee of a unit, person having executed a contract for the purchase of a condominium unit, or lender"); N.C. Gen. Stat. §§ 47C-3-118(b) (addressing "a unit owner or the unit owner's authorized agents"); and V.T.C.A. Property Code § 82.157(b) (addressing "the selling unit owner or the owner's agent").

[2] Courts have concluded that a plaintiff's request for a federal court declaration of rights under state law generally is improper for a ***single*** state's law. *E.g. Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 148 (3d Cir. 2014) ("Where state law is uncertain or undetermined, the proper relationship between federal and state courts requires district courts to step back and be particularly reluctant to exercise DJA jurisdiction.") (quotation marks omitted). Defendants' request for interpretation of ***seven*** state laws is particularly inappropriate for declaratory judgment.

4925-3696-3260.4

to this effect would not relieve Defendants of their obligation to establish their relationship with a designated party on a transaction-by-transaction basis and would therefore accomplish nothing.

Defendants' second request is for a declaration that Uhlig's User Agreements, "to the extent they purport to prohibit authorized designees from accessing statutorily mandated information, are illegal and unenforceable as contrary to public policy and state laws requiring access to the information." ECF 38, ¶ 74. Defendants' third request is for a declaration that Uhlig's purported exclusivity clause "cannot override the statutory rights of authorized requestors or the corresponding duties of HOAs, PMCs, and their agents." *Id.* Again, these broad requests concerning future transactions are not ripe without, at minimum, an allegation that Uhlig's Manual Process has resulted in statutory violations. Defendants' fourth request is for a declaration that Uhlig is subject to statutory obligations. At best, this is an advisory opinion absent factual allegations that a statutory violation occurred through the available Manual Process. ECF 38, ¶ 74.

Underlying the flaws in Defendants' claims is the fact that no statute contemplates, much less requires, Defendants' desired goal of gaining unrestricted, automated access to the Ordering Sites of their primary competitor, Uhlig. As Defendants know, Uhlig's Ordering Sites offer an extensive range of products and services, with context-sensitive pricing, rush delivery timeframes, account options, payment methods, and other features, most of which are not governed by any state statute. The Manual Process, by contrast, is simply and specifically designed to satisfy applicable statutory requirements, without exposing Uhlig to hacking or misconduct by third parties such as Defendants. For that reason, although (and indeed because) the Manual Process is strictly compliant with applicable law, Defendants have deemed it inconvenient and "commercially unreasonable" for their purposes, so they instead ask the Court to force Uhlig to grant Defendants' preferred form of access, with no limitations. There is no statutory basis, legal authority or factual allegations that might support such an extraordinary judicial intervention.

### 2.    *Defendants' Declaratory Judgment Claims Fail the Five Factors.*

Defendants' four declaratory judgment claims fail all five Tenth Circuit factors: 1) they will not settle any actual controversy because Defendants' ability to demonstrate they are an

4925-3696-3260.4

"authorized representative" is fact-dependent, specific to future transactions; 2) they would serve no useful purpose in clarifying the legal relations at issue as they inevitably will be dependent on factual matters over time; 3) the declaratory remedy most certainly is being used for the purpose of procedural fencing and to provide an arena for a race to *res judicata*, apparently so Defendants can claim entitlement to accessing the Ordering Sites forever (which their requested declarations would not provide); 4) these claims would increase friction between federal and state courts and improperly encroach upon state court jurisdiction, as Defendants seek declarations of their rights with respect to **seven** state statutes; and 5) there is an alternative remedy that is better or more effective – resolution of Uhlig's affirmative claims.[3]

### B.      *Count I Is Not Ripe and Lacks Plausibility*

Even if the Court were inclined to exercise DJA jurisdiction, Count I is not ripe for adjudication. Ripeness requires a real and substantial controversy that is definite and concrete. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 97 (2013). Defendants' DJA claims are premised on the *assumption* that Uhlig's Manual Process does not yield estoppel certificates in compliance with statutory requirements. Yet Defendants do not allege they ever submitted a request through the Manual Process. A DJA claim based on what might happen if Defendants were to use an available process they have never tried is the quintessential abstract, hypothetical dispute that federal courts are not empowered to resolve.

Finally, Count I fails under *Twombly* and *Iqbal* because it does not plausibly allege that Uhlig violated any state statute. The core premise of Count I is that the Manual Process "cannot feasibly be completed within the statutory timeframes." ECF 38, ¶ 21. This is a conclusory assertion, not a plausible factual allegation. Defendants have never tested the process and cannot purport to know the outcome. What Defendants allege is that the process appears cumbersome. *Id.* But an allegation that a process looks inconvenient—without any allegation that it actually fails to

---

[3] Further making declaratory judgment improper is Defendants' assertion that Rexera utilizes "agentic AI" to query online platforms such as the Ordering Sites. ECF 38, ¶ 27. According to M.I.T., agentic AI "integrates with other software systems to complete tasks independently or with minimal human supervision." https://mitsloan.mit.edu/ideas-made-to-matter/agentic-ai-explained (last visited May 18, 2026). Uhlig is unaware of any Court ever requiring a private website to allow access to artificial intelligence agents.

comply with legal requirements—does not plausibly state a claim for declaratory relief. Nothing in the statutory obligations cited by Defendants dictates that requests must be accepted or fulfilled through an online platform – indeed the Manual Process is the same kind of analog, non-automated process that predominated before online alternatives were gradually introduced, and that is still used for thousands of transactions where online processing is not available or preferred.

## II.   Count II (Tortious Interference with Business Relationships) Should be Dismissed

Defendants colorfully allege Uhlig tortiously interfered with Defendants' business relationships with PMCs, HOA boards, title companies, and lenders by: (a) "seeding a false narrative" through sales communications; (b) providing PMCs with "scripted language" to reject Rexera's requests; and (c) leveraging alleged exclusive contracts to coerce PMCs into refusing to deal with Rexera. ECF 38, ¶ 81. Count II is full of conclusory allegations and fails to state a claim.

### A.  Defendants' conclusory allegations fail to plausibly state a claim.

The allegations underlying Count II (and Counts III-VI) generally are set forth in ¶¶ 37-49 (although they are reframed and regurgitated throughout the pleading as if they were new). They are carefully-worded, conclusory, and fail to include any specific actionable conduct by Uhlig. For instance, ¶ 40 says a PMC sent Rexera an email that "parroted Uhlig's litigation allegations"; ¶ 41 says a PMC terminating its relationship made "discovery-type requests"; ¶ 43 says a Uhlig representative provided a flyer to a PMC that "frames HWD as not handling 'sensitive data' properly;" ¶ 47 says other unnamed PMCs have been "fed CondoCerts talking points"; ¶ 60 says "Uhlig's conduct already has interfered with well over one thousand customer transactions"; and ¶¶ 44, 45, and 49 all essentially say the same thing: that PMCs have terminated their relationship with Defendants, citing false accusations allegedly disseminated by Uhlig. These paragraphs allege no specifics as to: (a) the when, what, and how of Uhlig's specific representations; (b) the parties involved; or (c) the alleged business relationships that were interfered with. Rather, Count II represents the height of conclusory allegations and therefore fails to state a claim. *Khalik v. United*

*Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (complaint should be dismissed "if [the allegations] are so general that they encompass a wide swath of conduct, much of it innocent").

### B. Defendants' Allegations Fail to Show Uhlig's Conduct Was Unjustified

A claim for tortious interference requires that the interference be improper or without justification. *See Restatement (Second) of Torts* § 767 (listing factors for determining impropriety). To the extent Defendants complain about Uhlig's communications allegedly directing PMCs not to deliver documents outside the contractual framework, this is the exercise of legitimate contractual rights. Enforcing one's own contracts is not tortious; it is the exercise of a legal right. *Coon v. Trans Am Fin. Servs.*, No. 24-4025-DDC-RES, 2025 WL 317513, at *7 (D. Kan. Jan. 28, 2025) ("Beginning with the obvious, parties to a contract have the authority to enforce it.")[4] The only way Defendants conceivably could plead lack of justification for enforcement of contract rights would be to establish that Uhlig's contracts themselves are illegal—*i.e.*, that they violate state statutes. *DP-Tek, Inc. v. AT & T Glob. Info. Sols. Co.*, 100 F.3d 828, 834 (10th Cir. 1996) ("[C]ompetitive conduct which is neither illegal nor independently actionable does not become actionable because it interferes with another's prospective contractual relations.") (internal quotation omitted). As explained above, Defendants cannot plausibly allege that Uhlig's Manual Process fails to comply with seven state statutes because they have never used it.

### C. Defendants Have Not Alleged Actionable Falsehood

To the extent Defendants cognizably allege that Uhlig made false statements—specifically, that Rexera was "not an authorized party," Rexera was "taking Uhlig data and claiming it as their own," or HomeWise was "misappropriating" customer data (*See* ECF 38, ¶¶ 40, 44, 45, 47)—these statements are not actionable in the context of a tortious interference claim. Whether Rexera is an "authorized party" is a legal characterization, not a factual statement susceptible to being "true" or "false." Uhlig's position in this litigation is that Rexera violated Uhlig's User Agreements and is not authorized to access the Ordering Sites. A party's communication of its legal position

---

[4] Defendants do not identify the state law applicable to this claim. Given that the nature of the claim involves alleged tortious actions taken by Uhlig, which is headquartered in Kansas, Uhlig presumes Kansas law would apply. Kansas follows § 767 of the Restatement (Second) of Torts. *Turner v. Halliburton Co.,* 722 P.2d 1106, 1116-17 (Kan. 1986).

to business partners does not constitute tortious interference. *E.g., Williams v. Greenstein*, 580 P.3d 43, 54 (Kan. Ct. App. 2025), *review denied* (Feb. 27, 2026) (noting that the Kansas anti-SLAPP law, KS-ST 60-5320(c)(5), broadly defines "exercise of the right to petition" as: "(A) A communication in or pertaining to: (i) A judicial proceeding;"). Similarly, a party's statement of its opinion concerning the conduct or quality of its competitor (such as stating that the competitor's acquisition and use of data in violation of User Agreements constituted "misappropriation") is not actionable because it is protected by the First Amendment and thus is not "improper." *See, e.g., Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 858 (10th Cir. 1999); *Eddy's Toyota of Wichita, Inc. v. Kmart Corp.*, 945 F. Supp. 220, 225 (D. Kan. 1996).

## III.    Count III, N. C. Unfair and Deceptive Trade Practices Should be Dismissed

Count III asserts a claim under N.C. Gen. Stat. § 75-1.1, alleging Uhlig engaged in unfair competition and unfair or deceptive acts or practices. "As a general rule, a practice is considered unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *S. Atl. Ltd. P'ship of Tennessee, L.P. v. Riese*, 284 F.3d 518, 535 (4th Cir. 2002) (cleaned up). The predicate for Count III is that Uhlig's PMC contracts and Manual Process violate state estoppel certificate statutes. ECF 38, ¶ 89. As explained above, Defendants have not plausibly alleged any such violation because they have never used, and have no relevant experience with, the Manual Process. Without a plausible allegation that Uhlig is actually preventing statutory compliance—as opposed to making compliance less convenient than Defendants prefer—the "unfairness" theory collapses. An act is not "unfair" within the meaning of § 75-1.1 merely because it channels transactions through particular contractual arrangements, especially where an alternative (the Manual Process) exists and has never been alleged to fail. *Khouri v. Nat'l Gen. Ins. Mktg., Inc.*, 501 F. Supp. 3d 353, 359 (M.D.N.C. 2020) ("To be 'deceptive' within the meaning of § 75–1.1, a misleading act must occur under egregious or aggravating circumstances, and the harm resulting from the alleged deceptive practice must be such that the plaintiff could not reasonably avoid it.") (quotations omitted).

### IV. Count IV (California Unfair Competition, Cal. Bus. & Prof. Code § 17200) Should be Dismissed

Defendants bring a claim under California's Unfair Competition Law ("UCL"), alleging Uhlig engaged in "unlawful," "unfair," and "fraudulent" business practices.

#### A. The "Unlawful" Prong Fails Because No Predicate Violation Is Alleged

"To state a cause of action based on an 'unlawful' business act or practice under the UCL, a plaintiff must allege facts sufficient to show a violation of some underlying law." *Perez v. Wells Fargo Bank, N.A.*, 929 F. Supp. 2d 988, 1003 (N.D. Cal. 2013). Defendants allege Uhlig's conduct violates Cal. Civ. Code § 4530(a)(3), which provides "[d]elivery of the documents required by this section shall not be withheld for any reason nor subject to any condition except the payment of the fee." ECF 38, ¶ 97. Defendants do not allege they sought documents through the Manual Process, paid the required fee, and were denied delivery. Without such an allegation, they have not alleged a violation of § 4530(a)(3).

#### B. The "Unfair" and "Fraudulent" Prongs Fail for the Same Reasons

The "unfair" prong of the UCL requires that Uhlig's conduct threaten an incipient violation of antitrust law, or that the harm to consumers substantially outweighs the utility of the defendant's practice. *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214 (9th Cir. 2020). Defendants' unfairness theory depends on the Manual Process being nonfunctional—an allegation they cannot support because they never tried it. Similarly, the "fraudulent" prong requires conduct "likely to deceive members of the public." As discussed above, Defendants have plead no specific fraudulent conduct by Uhlig; all they offer are conclusory allegations. Uhlig's characterization of Rexera as "not authorized" reflects Uhlig's legal position and is protected by legal privilege. *See., e.g., Musk v. OpenAI, Inc.*, 795 F. Supp. 3d 1179, 1185 (N.D. Cal. 2025) (privilege extends to "include publication to nonparties with a substantial interest in the proceeding").

### V. Count V (Florida Trade Practices, Fla. Stat. § 501.204) Should be Dismissed.

Defendants bring a claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), alleging that Uhlig engaged in unfair and deceptive practices causing harm to consumers. "To state a FDUTPA claim, a plaintiff must allege three basic elements: (1) a deceptive

4925-3696-3260.4

act or unfair practice; (2) causation; and (3) actual damages." *Deere Constr., LLC v. Cemex Constr. Materials Florida, LLC*, 198 F. Supp. 3d 1332, 1337–38 (S.D. Fla. 2016). Like Counts III and IV, Count V is predicated on the allegation that Uhlig's Manual Process cannot comply with Florida's statutory requirements. Fla. Stat. §§ 720.30851 and 718.116(8) require associations to issue estoppel certificates within ten business days of a request. Defendants do not allege they submitted any request through the Manual Process and failed to receive a certificate in compliance with Florida statutes. Their claim that the process "cannot feasibly be completed within the statutory timeframes" is conclusory and unsupported by any factual allegation of actual failure.

Further, the allegations do not state a claim. In ¶ 105, Defendants make accusations about the impact of Uhlig's alleged conduct on homeowners. **But Defendants are not homeowners. They are business competitors seeking to use the consumer protection statute as a weapon in a commercial dispute.** To the extent they assert harm to third-party consumers, they lack standing. In ¶ 106, Defendants rely on the same conclusory allegations on which Counts II - IV are predicated. Defendants' allegations are insufficient because they are both conclusory and are privileged statements made as to Uhlig's position in pending litigation.

## VI.    Count VI (Lanham Act, 15 U.S.C. § 1125(a)) Should be Dismissed

Defendants' newly added Lanham Act claim alleges that Uhlig made false and misleading representations about Rexera, RealPage, and HomeWise in violation of 15 U.S.C. § 1125(a). ECF 38, ¶¶ 111-118. To establish a claim under § 1125(a), a plaintiff must show: (1) the defendant made material false or misleading representations of fact in connection with commercial advertising or promotion of its product; (2) in commerce; (3) that are either likely to cause confusion or mistake as to (a) the origin, association, or approval of the product with or by another, or (b) the characteristics of the goods or services; and (4) injure the plaintiff. *Cottrell, Ltd. v. Biotrol Int'l, Inc.*, 191 F.3d 1248, 1252 (10th Cir. 1999).

For their Lanham Act claim, Defendants claim Uhlig falsely stated that Rexera was "not an authorized party" to transactions, that Rexera was "taking CondoCerts data and claiming it as their own," that Rexera "scraped or harvested data for the benefit of HWD," and that

11

"HWD/RealPage is under big fire for this" alleged misconduct. ECF 38, ¶ 112. This claim fails as a matter of law: (1) none of the alleged statements constitute actionable misrepresentations of fact; (2) the allegations do not describe "commercial advertising or promotion"; and (3) the claim rests on the same conclusory allegations that doom Counts II through V.

### A.   Defendants Fail to Allege Actionable Statements of Fact

The Lanham Act prohibits false or misleading representations of fact in commercial advertising. *Cottrell*, 191 F.3d at 1252. Critically, the statute reaches only actionable statements of fact— "statements of opinion or mere 'puffery' are incognizable claims." *Ketonatural Pet Foods, Inc. v. Hill's Pet Nutrition, Inc.*, 756 F.Supp.3d 1128, 1149 (D. Kan. 2024). "To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." *Bimbo Bakeries USA, Inc. v. Sycamore*, 39 F.4th 1250, 1266 (10th Cir. 2022) (quotations omitted). If a statement is susceptible to more than one reasonable interpretation it cannot literally be false. *Ketonatural Pet Foods, Inc.,* 756 F.Supp.3d at 1149.

**"Not an authorized party."** Defendants claim PMCs stated Rexera was "not an authorized party" to transactions. ECF 38, ¶ 112. But Defendants do not allege that *Uhlig* made this statement. *See* ECF 38, ¶ 40 ("a PMC sent Rexera a message" that "parroted Uhlig's litigation allegations"). Defendants speculate that the PMC's statement must have come from Uhlig, but speculation is not a factual allegation entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678. Moreover, Uhlig's Amended Complaint contains no allegation that Rexera is "not an authorized party." *See generally* ECF 32. Uhlig's claims sound in breach of contract, trade secret misappropriation, and Computer Fraud and Abuse Act violations—none of which characterize Rexera as "not an authorized party."

**"Taking CondoCerts data and claiming it as their own."** This statement is not actionable under the Lanham Act because it is not a statement concerning the nature, characteristics, or quality of any product or service—it characterizes Rexera's conduct, which falls outside the statute's reach. *See Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1270 (10th Cir. 2000) (holding the Lanham Act reaches statements that implicate "the nature, characteristics, [or]

12

qualities" of products or services). The Lanham Act does not govern disputes over the lawfulness of a competitor's business practices. Defendants do not allege this statement was disseminated in commercial advertising or promotion—rather, it reflects Uhlig's litigation contentions. *See Sports Unlimited, Inc. v. Lankford Enters., Inc.*, 275 F.3d 996, 1004-05 (10th Cir. 2002).

**"Scraped or harvested data."** The allegation that Uhlig stated Rexera "scraped or harvested data for the benefit of HWD" fails because the statement is literally true. A statement that is literally true is not actionable under the Lanham Act. *See Bimbo Bakeries USA, Inc. v. Sycamore*, 39 F.4th 1250, 1266 (10th Cir. 2022). Defendants admit Rexera employs automated technology for document collection. ECF 40, ¶ 78 (admitting "that Rexera describes certain of its services as involving automated technology for HOA document collection and related services"). Uhlig's Amended Complaint further alleges Rexera utilized "agentic AI" to query online platforms including Uhlig's Ordering Sites. ECF 32, ¶¶ 9, 78. Characterizing Rexera's use of automated tools to extract data from third-party platforms as "scraping" or "harvesting" is an accurate description of that activity—not a misrepresentation. *See* ECF 32, ¶¶ 46-48 (alleging Rexera violated Terms of Use prohibitions on scraping, crawling, and spidering the Uhlig Systems). Because the statement is substantially true, it cannot support a Lanham Act claim.

**"Under big fire."** The alleged statement that "HWD/RealPage is under big fire for this" is quintessential, unactionable puffery. *Ketonatural Pet Foods*, 756 F.Supp.3d at 1149. This vague, subjective characterization cannot be objectively verified. No reasonable consumer would understand "under big fire" as a specific factual assertion about RealPage's or HWD's services.

### B.    *Defendants Fail to Plead "Commercial Advertising or Promotion"*

Even if Defendants had alleged actionable misrepresentations, they have not plausibly alleged that any statements were made in "commercial advertising or promotion" (15 U.S.C. § 1125(a)(1)(B)), which requires a statement to be: (1) commercial speech; (2) by a defendant in commercial competition with plaintiff; (3) for the purpose of influencing customers to buy defendant's goods or services; and (4) disseminated sufficiently to the relevant purchasing public

13

4925-3696-3260.4

to constitute advertising or promotion within that industry. *Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1273-74 (10th Cir. 2000).

Under the Lanham Act, distribution to a limited number of individuals is not "commercial advertising or promotion". *Sports Unlimited, Inc. v. Lankford Enters., Inc.*, 275 F.3d 996, 1004-05 (10th Cir. 2002) (holding that distribution of allegedly false reference list to two persons "simply does not, within the meaning of the Act, amount to commercial advertising or promotion"). Defendants' own allegations describe isolated, scattered communications: an email from a PMC on March 19, 2026; a termination notice from another PMC on March 20, 2026; and vague references to "in-person communications at industry meetings and conferences." ECF 38, ¶ 99. These disparate, reactive communications do not constitute a coordinated advertising campaign or public dissemination by Uhlig. Defendants' conclusory assertion that these were "commercial advertising and promotion directed at the relevant purchasing public" (ECF 38, ¶ 116) is a legal conclusion, not a factual allegation entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678.

## C. *Defendants Fail to Plead Confusion*

Finally, Defendants do not allege Uhlig's statements were likely to cause confusion as to the origin, sponsorship, or characteristics of any goods or services. *Cottrell*, 191 F.3d at 1252. The alleged statements concern Rexera's conduct, which is not a statement about the "nature, characteristics, qualities, or geographic origin" of goods or services. 15 U.S.C. § 1125(a)(1)(B).

## IN THE ALTERNATIVE, CERTAIN ALLEGATIONS SHOULD BE STRICKEN

Under Fed. R. Civ. Proc. 12(f), the Court should strike Amended Counterclaim ¶¶ 1-2 and 33-34, the Section VII heading ("Uhlig's Scheme to Inflate the Acquisition Price") and allegations in ¶¶ 62-65, which reference, describe, or disclose confidential settlement communications. First, these passages directly violate the parties' Confidentiality Agreement. Following Uhlig's cease-and-desist letter, the parties executed a mutual covenant not to sue and entered a Confidentiality Agreement governing all discussions about a potential resolution, including a potential acquisition. *See* ECF 38, ¶¶ 33-34. The Confidentiality Agreement prohibits both the "use" and "disclosure" of covered information. By embedding the fact and substance of these discussions in their

14

pleading—including specific dollar figures and characterizations of negotiating positions—Defendants both used and disclosed covered information in violation of the agreement.

Second, and independently, F.R.E. 408(a) prohibits the use of settlement negotiations and offers to compromise to "prove or disprove the validity or amount of a disputed claim." The rule's purpose is "to promote nonjudicial settlement of disputes" by ensuring that parties can negotiate freely without fear their communications will later be weaponized in litigation. *See Bradbury v. Phillips Petroleum Co.*, 815 F.2d 1356, 1363 (10th Cir. 1987). The challenged passages describe terms the parties explored to resolve their dispute. Defendants deployed these communications for the precise purpose Rule 408 prohibits: to cast Uhlig's claims as a "leverage play" designed to coerce an "inflated acquisition price"—arguments directed to the validity and motivation of Uhlig's claims. *See* ECF 38, ¶¶ 1, 63-65. None of Rule 408's narrow exceptions applies.

A court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." § 1382 Motion to Strike—Redundant, Immaterial, Impertinent, or Scandalous Matter, 5C *Fed. Prac. & Proc. Civ.* § 1382 (3d ed.). "Impertinent" matter "consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.* Because Rule 408 renders settlement-related allegations inadmissible, they cannot support any claim for relief and serve only to prejudice the Court and inject inadmissible matters into this litigation. "[T]here exists a strong public interest in favor of secrecy of matters discussed by parties during settlement negotiations." *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 980 (6th Cir. 2003). The settlement-related allegations in paragraphs 1-2, 33-34, and 62-65 are, by definition, impertinent and immaterial.

15

Respectfully submitted this 17th day of July, 2026.

KUTAK ROCK LLP

s/ *Juliet A. Cox*

Juliet A. Cox, KS Bar #17016
2405 Grand Blvd., Suite 600
Kansas City, MO 64108
Tel: (816) 960-0090
Fax: (816) 960-0041
juliet.cox@kutakrock.com

and

Thomas W. Snyder, CO Bar #33106
(admitted *pro hac vice*)
Hannah E. Huston, CO Bar #59293
(admitted *pro hac vice*)
KUTAK ROCK LLP
2001 16th Street, Suite 1800
Denver, CO 80202
Tel: 303-297-2400
Fax: 303-292-7799
Thomas.snyder@kutakrock.com
Hannah.huston@kutakrock.com

*Attorneys for Plaintiff*

16

4925-3696-3260.4

**CERTIFICATE OF SERVICE**

I hereby certify that on the 17th day of July, 2026 the foregoing was filed via CM-ECF, which will automatically send an electronic copy to all counsel of record.

s/ *Juliet A. Cox*
*ATTORNEYS FOR PLAINTIFF*

17

4925-3696-3260.4