**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **UHLIG LLC d/b/a CONDOCERTS and d/b/a WELCOMELINK,**<br><br>**Plaintiff/Counter-Defendant,**<br><br>**v.**<br><br>**REALPAGE, INC., TOMTE, LLC d/b/a REXERA, and NEXTLEVEL ASSOCIATION SOLUTIONS, INC. d/b/a HOMEWISEDOCS.COM,**<br><br>**Defendants/Counter-Plaintiffs.** | **Case No. 2:26-cv-02144-JMK-ADM** |

**MEMORANDUM AND ORDER**

Defendants/Counter-Plaintiffs Realpage, Inc., Tomte, LLC, and Nextlevel Association Solutions, Inc. (collectively "Counter-Plaintiffs") file this motion for leave to exceed the 15-page limit imposed by D. Kan. R. 7.1(d)(3) in their response in opposition to Plaintiff/Counter-Defendant Uhlig LLC's Motion to Dismiss their counterclaims. Counter-Plaintiffs seek two additional pages in their response. Such motions are straightforward and normally unopposed. In fact, Uhlig does not oppose Counter-Plaintiffs' request for additional pages, and so, that request is granted. But beneath this motion lurks a dispute about font size and spacing that needs resolved.

The body of Uhlig's Motion to Dismiss was 15 pages, in apparent compliance with D. Kan. R. 7.1(d)(3). But whether that brief complied with another local rule—D. Kan. R. 5.1(a)—is another question. Rule 5.1(a) provides, in relevant part:

> Pleadings, motions, briefs, and other papers submitted for filing must be typewritten or printed on letter-size paper, *double-spaced, in no less than 12-point* (10-point for footnotes), Times New Roman or similar, uncompressed font. The court may strike any filing that does not substantially comply with the spirit of these requirements.

D. Kan. R. 5.1(a) (emphasis added). The dispute arises out of Uhlig's counsel's use of 24-point spacing, rather than its word processor's standard "double space" feature in its brief. This approach can allow for "three or four lines of text" to be added to each page. *Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*, 2022 WL 1081850, at *2 n.4 (W.D.N.C. Apr. 11, 2022). Counter-Plaintiffs assert that D. Kan. R. 5.1(a) requires usage of the standard "double space" function, as opposed to "exact 24" spacing, and further, that had Uhlig's brief been properly formatted, it would have been 17 to 18 pages in length. And so, fairness requires that Counter-Plaintiffs—who refuse to utilize exact 24 spacing themselves lest they too violate Rule 5.1(a)—be given two additional pages in their response.

In response, Uhlig takes issue with Counter-Plaintiffs' assertion that it violated the Court's local rules. According to Uhlig, because it used 12-point font, its usage of 24-point spaces quite literally constitutes double spacing.

Surprisingly, or perhaps unsurprisingly, other districts have considered this very issue. Some have agreed with Counter-Plaintiffs' position:

> Word processing programs, including the WORD program used in nearly all submissions to the Court, contain a standard setting for "double" spacing . . . . Thus, a common sense understanding of "double spaced" in the context of word processing along with the practical application of that understanding that has been previously followed by the Parties here and in countless other filings in the Court, quickly leads to the conclusion that "double spaced" refers to the standard "double" setting for spacing in WORD (or another widely accepted word processing program) rather than "24 Point" spacing.

*Duke Energy*, 2022 WL 1081850, at *2; *see also Doubleday Acquisitions LLC v. Envirotainer AB*, 2022 WL 18777366, at *3–4 (N.D. Ga. July 1, 2022) ("[A]s a matter of interpreting the Local Rules, the undersigned finds that for filings made in front of this Court, 'double spacing' means a word processing program's default double spacing, not exact spacing.").

Other courts have, at least arguably, applied Uhlig's formulaic approach of 12 x 2 = 24 to reach a different outcome. *See Sameer v. Khera*, 2018 WL 3472557, at *1 (E.D. Cal. July 18, 2018) ("This means that the *font* of documents filed with the Court in this case must be drafted using Times New Roman with a minimum font size of 12-point, with footnotes a minimum of 11-point, and that *line spacing* of such documents . . . must be double-spaced meaning, at minimum, 24-point *line spacing*."); *see also Jones v. Varsity Brands, LLC*, 2023 WL 11804062, at *2 (W.D. Tenn. Nov. 14, 2023).

The Court tends to agree with Counter-Plaintiffs. In its plain meaning, "double spaced" is understood to the average person as using one's word processor's "double space" setting. Even though 24 is literally "double" 12, the term "double space," as it is used in ordinary language, is much less formulaic. Merriam Webster defines "double space" as typing something while "leaving alternate lines blank." *Double-space*, Merriam-Webster, https://perma.cc/9RB4-K9D9 (last visited Aug. 5, 2026). Likewise, the American Heritage Dictionary defines "double space" as typing or formatting "so that there is a full space between lines." *Double-space*, American Heritage Dictionary, https://perma.cc/QQJ6-MHV6 (last visited Aug. 5, 2026). In its ordinary meaning, "double spacing" is less about multiplying font size by two than it is about leaving a standard space, or room, between lines. Microsoft Word, or any other standard word processor, provides for that standard in its default, double space setting. The plain language of Rule 5.1(a) does not contemplate modifying that default setting to employ strict, 24-point spacing.

That said, the text of Rule 5.1(a) also contains some flexibility. The Court can "strike any filing that does not *substantially comply with the spirit of these requirements*." D. Kan. R. 5.1(a) (emphasis added). Although the Court finds that Counter-Plaintiffs' interpretation of Rule 5.1(a) is the better one, it does not go as far to find that Uhlig did not *substantially comply* with the *spirit*

of Rule 5.1(a) in using "exact 24" spacing. Counter-Plaintiffs do not move to strike Uhlig's motion, and the Court declines to do so sua sponte.

With that said, sometimes clear rules are preferable to flexible standards. *See* Louis Kaplow, *Rules Versus Standards: An Economic Analysis*, 42 Duke L.J. 557, 622 (1992) ("The reason is simply that the rules, announced in advance, are more likely to influence actual behavior, whereas individuals may find it infeasible or too costly to predict how an adjudicator will apply a standard to their behavior."); *see also Magallanes v. Colvin*, 2016 WL 4733862, at *2 (D. Kan. Sept. 12, 2016) ("The old adage that 'it is better to ask for forgiveness than permission' does not apply in federal court."). To that end, the Court grants Counter-Plaintiffs' request for a clear rule, and orders that the parties to use standard double spacing, and not "exact 24" spacing, in all future filings in this case. If space is an issue in any briefs moving forward, the Court will give full and fair consideration to any motions for leave to exceed the page limitations filed by the parties.

THE COURT THEREFORE ORDERS that Defendants/Counter-Plaintiffs' Motion for Leave to File Response Brief of Up to 17 Pages (Doc. 54) is GRANTED.

THE COURT FURTHER ORDERS that the parties use standard double spacing, and not "exact 24" spacing, in all future filings in this case.

IT IS SO ORDERED.

Dated: August 5, 2026                    s/ Jeffrey M. Kuhlman
                                         JEFFREY M. KUHLMAN
                                         UNITED STATES DISTRICT JUDGE