**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UHLIG LLC d/b/a CONDOCERTS™ and d/b/a WELCOMELINK®<br><br>Plaintiff/Counter-Defendant,<br>v.<br><br>REALPAGE, INC., TOMTE, LLC d/b/a REXERA, and NEXTLEVEL ASSOCIATION SOLUTIONS, INC. d/b/a HOMEWISEDOCS,<br><br>Defendants/Counter-Plaintiffs. | Case No. 2:26-CV-2144 |

**PLAINTIFF/COUNTER-DEFENDANT UHLIG LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COUNTERCLAIMS PURSUANT TO FED. R. CIV. P. 12(b)(6) OR, IN THE ALTERNATIVE, TO STRIKE PURSUANT TO FED. R. CIV. P. 12(f)**

Plaintiff Uhlig LLC d/b/a CondoCerts™ and d/b/a WelcomeLink® ("Uhlig") submits its reply in support of its motion to dismiss the six Amended Counterclaims asserted by Defendants RealPage, Inc. ("RealPage"), TOMTE, LLC d/b/a Rexera ("Rexera"), and NextLevel Association Solutions, Inc. d/b/a HomeWiseDocs ("HomeWise") (together, "Defendants") in their Amended Counterclaims and Answer to Amended Complaint (ECF 40) (the "Amended Counterclaims"), or in the alternative, to strike allegations pursuant to Fed. R. Civ. P. 12(f).

## ARGUMENT

### I. Count I Seeks an Advisory Opinion on Hypothetical State-Law Questions

Defendants contend their request for three declarations satisfies the discretionary factors because "each turns on the same question: whether Uhlig may deny Rexera access to a viable way to obtain disclosure documents while forbidding its customers from delivering them directly." ECF 60 at 4. This is a false issue: Uhlig has never claimed it is not required to provide a "viable" way to obtain disclosure documents to authorized requestors, and Defendants do not contend otherwise. Thus, there is no controversy for this Court to resolve.

Defendants nevertheless proceed to contend the Manual Process Uhlig has offered is not viable. First, the argument is irrelevant to Defendants' declaratory judgment claims, which don't seek a declaration that the Manual Process is not "viable." Rather, Defendants seek a determination that Uhlig must provide a viable path to authorized requestors, which Uhlig has never contested. Indeed, the Manual Process is designed to determine *whether* Defendants are authorized requestors. Second, the argument does not rest on plausible allegations because Defendants concede they never attempted the Manual Process. Without alleging the Manual Process failed to timely deliver requested information to Defendants as authorized requestors, Defendants' harm is theoretical. Recognizing their predicament, Defendants cite the inapposite case of *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007), where the Court stated: "Our analysis must begin with the recognition that, where threated action by *government* is concerned, we do not require plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat." (emphasis in original). This is not a governmental action for "liability," nor is any harm to Defendants by using the Manual Process even clear.

Defendants argue the Court should "infer" the Manual Process is unviable, and the process appears onerous despite successful use by others. This is not a logical inference. Indeed,

commercial real estate transactions long predated the Internet and electronic ordering, yet mortgage applications were processed and homes were sold without this technology. Even today, many HOAs still process their orders in-house, completely offline. The logical inference is not that the Manual Process prevents timely production of information for real estate sales; it is that the Manual Process in fact is viable, which is why Defendants never attempted to use it.

Defendants later argue statutory language bolsters their contention the Manual Process is unviable. Defendants cite Cal. Civ. Code § 4530(a)(3), which provides: "Delivery of the documents ***required by this section*** shall not be withheld for any reason nor subject to any condition except the payment of the fee authorized pursuant to subdivision (b)." (emphasis added). Defendants ignore what is "required by this section." <u>Only the property owner or someone authorized by the property owner is entitled to receive the resale documents</u>. *See* § 4530(a)(1) (The association shall "provide ***the owner of a separate interest***, or any other recipient ***authorized by the owner***, with a copy of all the requested documents specified in Section 4525.") Section § 4525(a) underscores this: "The owner of a separate interest shall provide the following documents to a prospective purchaser of the separate interest…" including the owner's personal delinquencies, such as unpaid fines, penalties and assessments, and copies of unresolved violation notices sent to the owner. *See* §§ 4525(a)(4) and (5). In fact, California requires use of a specific form to disclose costs and other information *before* processing any request for documents. §§ 4528 and 4530(b)(2). That form requires, *inter alia*, the property address, the name and mailing address of the property owner, and disclosure of the name of the person completing the form. § 4528. Further, if the documents already are in the seller's possession, the seller must provide them to the buyer at no cost. § 4530(b)(6). Thus, California contemplates a significant amount of information from the owner and other processes before the obligation to deliver documents arises.

Defendants further argue Uhlig's Manual Process violates California law (and thus is unviable) because it "conditions delivery on separately executed wet-ink authorizations, payment by paper check or money order, and a physical package mailed to Kansas." ECF 60 at 6. The argument is unsupported. Section 4530(a)(1) requires (a) a written request, (b) the statutory delivery period runs from when the request is mailed or delivered, and (c) the request be from the owner or a recipient authorized by the owner. Once those conditions are met, the documents still can be withheld if payment has not been made. § 4530(a)(3). Nowhere does the California Civil Code state, as Defendants contend, that (a) an association is required to deliver sensitive, non-public documents of a specific homeowner simply because a third-party sends a request and is willing to pay, (b) associations must accept credit cards, or (c) associations are precluded from confirming the requester is the owner or a recipient authorized by the owner.

Similarly, Defendants grossly misconstrue Fla. Stat. §§ 718.116(8) and 720.30851, which actually contemplate use of the Manual Process. Both provide that "[w]ithin 10 business days after receiving a written or electronic request for an estoppel certificate from a parcel [unit] owner or the parcel [unit] owner's designee, or a parcel [unit] mortgagee or the parcel [unit] mortgagee's designee, the association shall issue the estoppel certificate." Nothing in those statutes requires the association to accept an unverifiable electronic signature in lieu of confirming the identity of the requestor as the owner, the mortgagee or their designee, nor do these statutes require electronic payment, as Defendants argue. ECF 60 at p. 7. Indeed, the statutes provide an association can require a request to be made by mail: "Each association shall designate on its website a person or entity with a street or e-mail address for receipt of a request for an estoppel certificate issued pursuant to this section. The estoppel certificate must be provided by hand delivery, regular mail, or e-mail to the requestor on the date of issuance of the estoppel certificate." *Id.*

Finally, even assuming Defendants' declaratory judgment requests lined up with their contention the Manual Process is unviable (they don't), and even if Defendants plausibly alleged the Manual Process is unviable (they don't), the Court should decline to exercise discretionary jurisdiction over novel state-law questions untethered to any concrete transaction. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). Asking a federal court to construe seven different state statutes in the abstract would encroach on state courts' authority to interpret their own laws. Whether Defendants are entitled to access Uhlig's online sites will be resolved in connection with Uhlig's affirmative claims, making Defendants' declarations unnecessary. *See, e.g., Graphic Technologies, Inc. v. Pitney Bowes Inc.*, 998 F. Supp. 1174 (D. Kan. 1998) (declining jurisdiction where surviving claims involved the same issues, making the declaratory claim "superfluous").

## II. Count II Fails: The Amended Counterclaims Identify No Wrongful Conduct by Uhlig

Count II alleges Uhlig tortiously interfered with Defendants' business relationships through a "disinformation campaign." ECF 40, ¶¶ 80-86. The claim fails at the threshold. To state a claim for tortious interference under Kansas law, a plaintiff must prove intentional misconduct. *Cohen v. Battaglia*, 293 P.3d 752, 755 (Kan. 2013). The Amended Counterclaims attribute the alleged statements to PMCs and HWD customers, *not to Uhlig*. ECF 40, ¶ 40. Defendants nevertheless ask the Court to infer Uhlig made statements to the customers, but that is not a plausible inference: correlation is not causation. Contrary to Defendants' argument, statements that Defendants are "unauthorized" or acting "unlawfully" in using commercial information from Uhlig's sites are prototypical legal statements, not facts, and thus protected by the broad anti-SLAPP statute cited in Uhlig's motion. Finally, it is not unlawful to enforce one's lawful arrangements. Defendants fail to allege plausible facts establishing unlawfulness because they fail to allege they cannot establish their alleged status as authorized requestors and timely receive requested information through the Manual Process.

**III. Counts III–V Fail Because They Rest on the Same Unpled Theory**

Counts III-V allege violations of North Carolina, California, and Florida unfair trade practices statutes. Each depends on the premise that the Manual Process violates state document-disclosure laws. Defendants have never alleged they attempted to use the Manual Process and were denied documents. Without that allegation, these claims collapse. And it is not deceptive for Uhlig to inform PMCs that Rexera is not authorized to use Uhlig's Ordering Sites. That statement is true.

**IV. Count VI Fails Because Defendants Plead No Actionable Misrepresentation**

Count VI alleges violations of the Lanham Act, 15 U.S.C. § 1125(a). ECF 40, ¶¶ 111–117. The Lanham Act prohibits false advertising that injures commercial competitors. It does not provide a remedy for disappointed customers of a competitor's platform who wish to access that platform on different terms. As set forth above, Defendants do not allege any false or misleading representation of fact that Uhlig made about Defendants, much less one disseminated in commercial advertising or promotion.

**V. Striking Disclosures of Confidential Settlement Communications**

In the alternative, Uhlig moves to strike ¶¶ 21–28, 33–34, and 62–65, which describe confidential settlement communications. ECF 46, at 15–17. Rule 12(f) permits the Court to strike "redundant, immaterial, impertinent, or scandalous matter." "Immaterial" matter is that which has no essential relationship to the claim for relief or the defenses pleaded. 5C Fed. Prac. & Proc. Civ. § 1382 (3d ed.). Defendants argue that F.R.E. 408 "is an evidentiary rule concerning admissibility" with "no bearing" on pleading sufficiency. ECF 60 at 15–16. That argument conflates admissibility at trial with the propriety of including settlement communications in a pleading in the first instance. Because Rule 408 renders these allegations inadmissible, they cannot support any claim for relief and serve only to prejudice this litigation. The settlement-related allegations are, by definition, impertinent and immaterial.

Respectfully submitted this 21st day of August, 2026.

KUTAK ROCK LLP

*s/ Juliet A. Cox*

Juliet A. Cox, KS Bar #17016
2405 Grand Blvd., Suite 600
Kansas City, MO 64108
Tel: (816) 960-0090
Fax: (816) 960-0041
juliet.cox@kutakrock.com

and

Thomas W. Snyder, CO Bar #33106
(admitted *pro hac vice*)
Hannah E. Huston, CO Bar #59293
(admitted *pro hac vice*)
KUTAK ROCK LLP
2001 16th Street, Suite 1800
Denver, CO 80202
Tel: 303-297-2400
Fax: 303-292-7799
Thomas.snyder@kutakrock.com
Hannah.huston@kutakrock.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 21st day of August, 2026 the foregoing was filed via CM-ECF, which will automatically send an electronic copy to all counsel of record.

s/ *Juliet A. Cox*
*ATTORNEYS FOR PLAINTIFF*